## J. McCabe Moore v. James M. Nation.
### No. 16,433.
#### SYLLABUS BY THE COURT.

1. Office and Officers—*Duties—Performance.* The duties of a public office include all those which fairly lie within its scope; those which are essential to the accomplishment of the main purposes for which the office was created, and those which, although incidental and collateral, are germane to or serve to promote or benefit the accomplishment of the principal purposes. All such duties are official and the incumbent may be compelled to perform them. Duties not so related to an office are unofficial, can not rightfully be attached to it, and the incumbent is not obliged to perform them.

2. Jury and Jurors—*Selection—Judicial Function.* To make effectual the constitutional guaranty of the right of trial by jury the district court possesses, by virtue of the sovereignty reposed in it, inherent power to provide itself with a jury. The legislature may aid and regulate the exercise of this power, but the selecting of jurors from the inhabitants of the proper territory to determine issues of fact in court is a court function, cognate with that of hearing and deciding, and is not "administrative" in origin, purpose or character in the true sense of that term.

3. —— *Jury Commissioner — Duty Imposed upon District Judge.* Chapter 232 of the Laws of 1907 requires the judge of the district court in certain counties to perform the duties of jury commissioner, and authorizes him to appoint a jury clerk to assist him in the performance of such duties. *Held,* the duties prescribed are not administrative in character, fall within the scope of the office of judge of the district court, and do not appertain to another office within the meaning of section 13 of article 3 of the constitution forbidding a judge of the district court to hold any other office of profit or trust.

4. Office and Officers—*New Duties—Additional Compensation.* When a public official takes office he undertakes to perform all its duties, although some of them may be called into activity for the first time by legislation occurring after he enters upon his term. In such an event he must perform the increased service without increased compensation, unless the legislature has the power and sees fit to grant him additional pay.

5. Constitutional Law—*Additional Compensation for Judicial Officer.* The act of 1907 referred to in paragraph 3 contains

Moore v. Nation.

a provision increasing the salaries of district judges performing the services specified from $3000 to $3500 per annum. Section 13 of article 3 of the constitution provides that judges of the district courts shall receive such compensation for their services as may ·be provided by law, which shall not be increased during their terms of office, and that they shall receive no fees or perquisites.   *Held,* that district judges in office when the statute took effect were obliged to render the increased service without increased compensation for the remainder of their terms.

Original proceeding in mandamus.   Opinion filed July 3, 1909.   Writ denied.

*C. F. Hutchings,* for the plaintiff.

*Fred S. Jackson,* attorney-general, *John Marshall,* assistant attorney-general, and *Charles D. Shukers,* special assistant attorney-general, for The State.

The opinion of the court was delivered by

BURCH, J.: The plaintiff was judge of the district court of Wyandotte county for the four-year term ending in January, 1909.   When he entered upon the term his salary was fixed by law at $3000 per annum. Afterward the legislature imposed upon the judge of the district court for that county the duty of preparing and revising lists of qualified jurors and of drawing therefrom the names of persons to serve on juries, and authorized him to appoint a jury clerk to assist him in the performance of such duty.   (Laws 1907, ch. 232.)   The same act increased the salary of the office to $3500 per annum.   The plaintiff performed the additional service required of him for the remainder of his term, but the defendant, the state auditor, refused to audit vouchers for the increase in compensation and to issue warrants on the treasurer in payment therefor.   The plaintiff asks for a writ of mandamus to compel him to do so.

43—80 KAN.

Section 13 of article 3 of the constitution reads as follows:

"The justices of the supreme court and judges of the district court shall, at stated times, receive for their services such compensation as may be provided by law, which shall not be increased during their respective terms of office; provided, such compensation· shall not be less than fifteen hundred dollars to each justice or judge, each year, and such justices or judges shall receive no fees or perquisites nor hold any other office of profit or trust under the authority of the state, or the United States, during the term of office for which such justices and judges shall be elected, nor practice law in any of the courts in the state during their continuance in office."

The plaintiff argues that the statute did not create another office—as that of `jury commissioner—and make him the incumbent, but that it merely imposed upon him as judge certain additional duties in aid of the discharge of his judicial duties; and it is said that this could be done because the new duties have an ultimate judicial purpose, are incidental to the exercise of judicial power, and are closely connected with and are germane to the judicial function. Excellent authorities are cited for these propositions.

In passing upon a statute conferring upon justices of the appellate division of the supreme court the power to appoint special jury commissioners the New York court of appeals said:

"The constitution of 1846 provided that judges of the court of appeals and justices of, the supreme court should not 'exercise any power of appointment to public office,' but this provision was omitted in the revision of the judiciary article in 1870, and it does not appear in our present revised constitution. (Const. 1846, art. 6, sec. 8; Rev. Const., art. 6.) The omission of the express prohibition excludes one by implication. But, while a justice of the supreme court is no longer prohibited absolutely from appointing to public office, a limitation is placed upon his powers in this regard by the provision that he 'shall not hold any other office or public trust.' (Art. 6, sec. 10.) The power to ap-

Moore v. Nation.

point a special jury commissioner is a public trust, because it is intrusted to public officers, to be exercised in behalf of the public, by clothing a private citizen with the powers and duties of public office. Unless, therefore, it has some reasonable connection with a judicial purpose, it is not a part of a judicial office and can not be imposed upon a justice of the supreme court. (*Matter of Davies*, 168 N. Y. 89.) What, however, is more germane to the judicial function than the selection of proper jurors to aid in the administration of justice? The right of the jury to decide all issues of fact presented to the court at which they attend makes their selection a judicial purpose of the highest importance. It is an invaluable aid to the discharge of judicial duties, and hence may be attached by the legislature to the judicial office, as incidental to the exercise of the usual powers of that office. The appointment of a jury commissioner rests on the same principle as that of stenographers, judges' clerks, and the like. The appointment of such officers is authorized because the discharge of their duties aids the judges in the performance of their judicial functions; and so the appointment of a special jury commissioner to select jurors aids the judges in transacting the usual business of their courts." (*People v. Hall,* 169 N. Y. 184, 195.)

In the case of *Daily Register Printing Co. v. Mayor,. etc.,* 59 N. Y. Supr. Ct. 542, the opinion reads:

"There is nothing in the point as to the prohibition of justices of the supreme court from holding other offices or public trusts. The duty imposed upon the presiding justice, of designating (with others) a law journal in which the calendars of the courts should be published, is nothing more than an additional duty attached to the judicial office. Having made that designation, certain other incidents follow the act, such as the requirement with respect to legal notices generally. But the designation of the journal is, primarily, for the thorough dissemination of the court calendars. This is important in securing preparation for trial and prompt attendance upon the call of the calendars. It would certainly be a very narrow and strained construction of the constitution to hold that a duty, having such results for its object, was foreign to the judicial office. The illustrations of similar duties imposed upon the presiding justice and his associates by other laws, fur-

nished by Mr. Justice Patterson in his opinion at special term, suffice to show a general legislative intent not to confine the judicial duty to the bare hearing and decision of cases, but occasionally to impose upon the judges, in the line of their vocation, duties bearing upon the general administration of justice." (Page 554.)

If the reasoning of these decisions be unsound, the plaintiff can not recover. If the duties of jury commissioner can not be assigned to the judicial office they belong to another office of trust, which the constitution forbade the plaintiff to hold. For present purposes it will be assumed that the duties specified in the statute fall within the scope of the office of judge of the district court.

Having thus bound up the function of selecting and drawing jurors for the trial of causes with the function of adjudicating such causes, the plaintiff proceeds to sever the ligature so that he may receive an increase in pay, in the following manner: The function of jury commissioners is not judicial but is administrative in its nature; it does not pertain to the office of district judge as such; the framers of the constitution had in mind compensation for the services of a judge, as such, when acting in a judicial capacity only; and the constitutional provision quoted has no reference to extra pay for extra services of an administrative character like those required by the statute. It is said in the plaintiff's brief:

"One class of services or duties *belongs* to the office, and a compensation for such class can not be increased during the term. Another class does *not* belong, but can be *attached* by the legislature, to the office, for which services compensation can be given during the term, if the purpose and result is to aid in the discharge of the usual judicial duties."

If this be true, extra pay to a judge for appointing a special jury commissioner, as in *People v. Hall, supra,* or for designating a paper for the publication of the court calendar, as in *Daily Register Printing Co. v.*

Moore v. Nation.

*Mayor, etc., supra,* or for numberless other things which he does to speed and prosper his usual and ordinary work of hearing and deciding causes would not be compensation for services as judge in the sense of the constitution. More than this, whenever a judge of the district court acts as jury commissioner *pro tempore* and superintends the drawing of jurors to fill a depleted panel, or selects jurors for the term and causes a venire to issue because jury-lists have not been returned or the panel has been vitiated (Gen. Stat. 1901, §§ 3816, 3822), he steps outside the scope of his duties as judge, acts as an administrative officer, and may be given extra pay for the work without receiving an increase in compensation contrary to the constitution. Some authorities are cited to sustain this novel position, but they seem to the court to fall short of doing so.

In the case of *Love v. Baehr,* 47 Cal. 364, the legislature imposed upon the attorney-general the duty of acting with a board of examiners to approve or reject claims against the state, examine the books of the controller and treasurer, count the money in the treasury, and invest school funds, giving him a salary of $1500 per annum as a member of the board. It was held that such services were foreign to and outside the scope of the office of attorney-general, could be declined without a breach of duty as attorney-general, and hence that no constitutional impediment existed precluding a person in office when the act was passed from taking compensation for them. The court said:

"From the earliest period of our history as a nation almost every state in the Union had a secretary of state, controller, treasurer, and attorney-general; and the general nature of the duties pertaining to each were perfectly well known to the framers of our constitution. It is clear beyond controversy that in establishing similar offices here the framers of that instrument had reference to the same general class of duties which it was well known pertained to such offices elsewhere. The constitution provides for the election of a superin-

tendent of public instruction, whose duties are not defined; and might have provided for the election of a state geologist. Can it be claimed with any show of reason that the legislature could compel either of them to become *ex officio* warden of the state prison or superintendent of the state lunatic asylum? It is not usual in state constitutions to define the particular duties of subordinate officers; that being the peculiar province of the legislature, which, it is to be presumed, will prescribe only such duties as in their nature have heretofore appertained to similar offices elsewhere. In the performance of this duty the legislature may rightfully exercise a wide discretion. It may assign to each of these officers any duties which, by the most liberal interpretation, can be held to come within the general scope of that class of duties which have usually appertained to such offices, as they were understood by the framers of the constitution. . . . Some of these services have not the slightest relation, even upon the most liberal construction, to the duties of an attorney-general, as such duties were generally understood at the adoption of the state constitution, and as they were doubtless understood by the framers of that instrument. The business of counting money in the treasury, examining books of account, requiring the skill of an expert accountant rather than the professional learning of a lawyer, and the investment of public money in bonds, is wholly foreign to the duties of an attorney, and is no more cognate to them than the management of a state prison or lunatic asylum." (Pages 367-370.)

Certainly there is nothing here to comfort the plaintiff. The court distinguished the two offices as separate, independent and unrelated by looking at the duties commonly affixed to them as they exist in the governmental schemes of states having similar institutions; but the main theme was double salary, and with this in mind the court said the legislature may assign to an office any duty which by the most liberal interpretation falls within its scope. No light whatever is thrown upon the question whether the framers of our constitution understood judicial services to include all

Moore v. Nation.

the incidental things germane to and in aid of the function of hearing and deciding.

In *County of San Luis Obispo v. Felts,* 104 Cal. 60, county assessors were entitled to receive fifteen per cent. of all amounts collected by them for poll-taxes. Road-overseers collected road poll-taxes and received fifteen per cent. of the amount for their services. While Felts was in office the law was changed so that the county assessor collected road poll-taxes, and it was held he had the right to retain the prescribed percentage of those also, although the gross receipts of his office were increased. The court said the rule was the same from first to last—a certain sum for a certain service—compensation in proportion to duty, and it made no difference that the field for rendering the service was enlarged. Compensation for services rendered—fifteen per cent. of whatever was collected—remained unchanged.

If in this case the plaintiff's compensation had been $10 per day for time employed, which usually was twenty days in the month, and an act of the legislature had increased the work until it required twenty-five days of each month, his compensation would have remained unchanged. It still would have been a certain sum for a certain service—$10 for each and every day. But if the legislature had raised the rate to $15 per day an increase in compensation for the same service would appear.

In the case of *Roulo v. Board of Auditors of Wayne Co.,* 74 Mich. 129, an act of the legislature required registers of deeds to report mortgages to assessing officers and to registers of deeds of other counties for purposes of taxation, and gave them compensation for the work. The court said:

"The legislature, by the act of 1887, imposed a new duty upon the register—one that never belonged to his office before, and one which was not contemplated, and could not have been, when his salary was fixed by the

auditors under the law of 1879. The act imposing this new duty, which he must perform under a penalty, imposed also a great responsibility upon him. For the performance of this duty, and the responsibility necessarily attending it, the legislature saw fit to give him an additional compensation over and above that heretofore received in the performance of the ordinary duties of his office. Our previous decisions are to the effect that he is entitled to it." (Page 133.)

In effect that act simply created a new office to carry out the provisions of the new tax law, and made the register of deeds the incumbent. The duties were separate from and independent of those of a register of deeds, but since the two positions were not incompatible the register could hold both and receive pay for both.

The case of *Town. of Bruce v. Dickey*, 116 Ill. 527, distinquishes itself. The question was whether a judge could engage in the private practice of law for fees. The opinion reads:

"The words that 'no judge of the supreme or circuit court shall receive any other compensation, perquisite or benefit, in any form whatsoever,' are not depended upon for the alleged inhibition, as manifestly they should not be; but it is the last clause, 'nor perform any other than judicial duties to which may belong any emoluments,' which is relied upon as containing the prohibition. These words naturally refer to official services, or to services required by law to be done, and not to work done by employment under a private contract. It is the performance of duties which is prohibited—a term which is suggestive of office. It is duties to which belong emoluments. The word 'emoluments' is peculiarly appropriate to office, denoting, in its most ordinary signification, the profit 'which is annexed to the possession of office, as salary, fees and perquisites.' And it is emoluments which belong to the performance of duties—the word 'belong' implying fixed, prescribed by some regulation, as are the emoluments attached to office, and not something contracted to be paid by agreement between private parties. This analysis of the language of this clause shows its fit-

ness as prohibiting the performance of any official duties, or duties imposed by law, to which any emoluments are attached, and that it is quite inappropriate language in which to couch a prohibition to conduct a lawsuit, or to perform any other work than judicial duties, under a private contract for a compensation to be paid. Had it been the intention to prohibit judges from doing any other work for pay, it could easily have been so said in plain terms, and we can not conceive that the cumbersome and inapt phraseology in question would have been used to express that purpose." (Page 535.)

In the case of *United States v. King,* 147 U. S. 676, it was said that the ordinary rule, in the absence of legislation, is that if a statute increase the duties of an officer by the addition of other duties germane to his office he must perform them without extra compensation. Seizing upon the words 'in the absence of legislation' the plaintiff argues that if there is legislation giving him extra pay he may recover it. That of course depends upon whether some paramount law stands in the way.

Some cases are cited to the effect that if the compensation of an officer be not fixed at the beginning of his term it may be fixed during the term, which doubtless is true, but unimportant here.

In Missouri the constitution provides that judges of the supreme, appellate and circuit courts, and all other courts of record receiving a salary, shall, at stated times, receive such compensation for their services as is or may be prescribed by law; but it shall not be increased or diminished during the period for which they are elected. A statute of that state enacted in 1895 requires a deposit of $10 to accompany an application for a change of venue, which, if the change be granted, goes to the judge of the circuit to which the case is transferred for trial. In the case of *Cunningham v. Current River Ry. Co.,* 165 Mo. 270, an order granting a change of venue was set aside for non-compliance with

this statute, the case was tried in the initial court, and judgment was rendered against the party who sought the change and who refused to appear at the trial. On appeal he contended that the statute is unconstitutional. In reviewing the record the supreme court of Missouri said:

"The ten dollars whose payment is required to be made on the presentation of an application for a change of venue from the circuit where the cause is at the time pending is not intended [as] and is in fact in no sense an increase in the salary of the judge to whom it is to be paid, but compensation for extra labor imposed upon him by the person on whose application the venue is changed by reason of the cause being sent to him from another circuit.

"The compensation mentioned in the constitution means compensation paid by the state, or some subdivision thereof, in the way of an increase of salary or compensation, which can not be increased by legislation during the period for which the judge is elected, but does not mean that he may not be paid for extra services and expenses incurred in the performance thereof, even out of the state treasury." (Page 277.)

The plaintiff says that case decides that during his term of office a judge who receives a salary as compensation for the service performed and labor devoted to the trial of cases in his circuit can be granted extra pay for the labor of trying cases coming to his circuit on change of venue, without increasing his compensation in the sense of the constitutional provision recited. If that be the decision, it is anomalous and this court declines to follow it.

The case of *Comm'rs of Miami Co. v. Collins,* 47 Kan. 417, is cited, in which this court said:

"If the legislature has the power to add to the duties of the office, it follows that it has power to provide for compensation for the performance of the additional duties, the constitutional provision only fixing compensation for the class of duties therein enumerated." (Page 419.)

The court there referred to the duty of issuing liquor permits cast upon the person holding the office of probate judge. The words "add to the duties of the office" were not used as the plaintiff interprets them. No addition had been made to the duties of the office of judge of the probate court. As shown in *Intoxicating-liquor Cases,* 25 Kan. 751, the person holding that office was virtually invested with the separate and independent office of commissioner of licenses. The constitution does not prohibit the probate judge from holding other offices of trust and profit, and he could therefore accept the new office and its emoluments.

In the case of *Burroughs v. Comm'rs of Norton Co.,* 29 Kan. 196, the court merely held that the term "such services," used in a statute fixing the compensation of county commissioners, referred to services at meetings particularly specified in the context, and that remuneration for services in attending other meetings held for other and different purposes was not forbidden.

Such are the authorities which the plaintiff has selected from the wilderness of precedent to support his claim, and they are unpersuasive. A brief independent search has revealed none better adapted to serve the plaintiff's purpose, and the court is inclined to regard the distinction between duties which "belong" to an office and duties which may be "attached" to it as artificial and unsubstantial.

The duties of an office include all those that fairly lie within its scope; not merely those which are necessarily involved in the accomplishment of the main purpose of the office, but those also which, although incidental and collateral, naturally and properly serve to promote and benefit the performance of the principal duties. Constitutions and statutes seldom define with precision the scope of any office. The place it usually occupies in political systems of like character is some guide. The common law is relied upon to supply many incidents, and others are left to inclusion by necessary

implication. In time the need becomes apparent for further or better definition, and it is said new duties are added, or "attached," germane to those already in existence. In reality the true scope of the office already included such duties. All that is accomplished is to make active that which before was latent. If the office do not potentially embrace the duty the duty appertains to another office. Before any duty can be classified as falling within the scope of an office it must belong there, and nothing can be added or attached to an office that does not belong there. Whatever the standard of classification—in aid of the usual functions, incidental, collateral, appertaining or germane to or connected with the principal duties, in line with the main purpose, or other test—when tested the duty belongs to the office, is official, and the incumbent must perform it, or it does not belong to the office, is unofficial, can not lawfully be attached to the office, and need not be performed if an attempt to attach it to the office be made.

If, however, the distinction which the plaintiff makes were sound generally, it can not be allowed in this case. All the statute did was to authorize the plaintiff to exercise directly a power which already inhered in the court over which he presided, but which ordinarily is exercised mediately. The constitution of this state guarantees the right of trial by jury, and every court charged with the duty of trying jury causes possesses by virtue of its very establishment as such court the power to provide itself with a jury in order that it may accomplish the purpose for which it was created. This power is not merely "attached" to the court as something extra to its ordinary functions, but it "belongs" to the court in the most vital and integral sense. The New York court was correct in saying in *People v. Hall,* 169 N. Y. 184, that the right of the jury to decide all issues of fact presented to the court makes their selection a judicial purpose of the highest importance. But its grasp of the fundamental principle somewhat re-

laxed when it made the selection of jurors merely an aid and incident to the exercise of the usual powers of the judicial office. That function is one of the powers of the judicial office, cognate with that of hearing and deciding—an essential element of the sovereign power reposed in the court, to be exercised precisely as all its authority is manifested.

For many years the congress of the United States made no provision for summoning grand juries or defining their powers, yet they were regularly summoned and regularly acted. In the case of *The United States v. Hill et al.*, 1 Brock. (U. S. C. C.) 156, Mr. Chief Justice Marshall, sitting as circuit justice, justified this display of judicial authority as follows:

"It has been justly observed that no act of congress directs grand juries, or defines their powers. By what authority, then, are they summoned, and whence do they derive their powers?

"The answer is that the laws of the United States have erected courts which are invested with criminal jurisdiction. This jurisdiction they are bound to exercise, and it can only be exercised through the instrumentality of grand juries. They are, therefore, given by a necessary and indispensable implication. But how far is this implication necessary and indispensable? The answer is obvious. Its necessity is coextensive with that jurisdiction to which it is essential." (Page 159.)

Whenever the statutory measures for obtaining petit jurors have failed or have been exhausted the court itself issues an open venire and brings in a jury as a measure indispensable to the exercise of its jurisdiction. (*Clawson v. United States*, 114 U. S. 477, and cases cited in the opinion; 12 Encyc. Pl. & Pr. 274; 24 Cyc. 230.) And if every law on the statute-books relating to the selecting and summoning of jurors was repealed the courts would go on selecting and summoning them without any interruption of the administration of justice.

The twelve jurors who are finally sworn to try the

cause are in fact selected for the purpose by the court as a court, and the assembling of a larger number from which to choose is merely an earlier stage of the same process. At common law, when the issues were made up, the judicial precept, *venire facias,* issued to bring in a jury. The selection and the summons were made at the same time. If the sheriff and the coroner were both disqualified the court itself appointed elisors to make the selection (3 Black. Com. 354), and here may be found the common-law prototype of the judicial power to appoint jury commissioners. But the decisions identify this power with that of the court to select the jury.

In the case of *State v. Mounts,* 36 W. Va. 179, the question was whether the appointment of jury commissioners by judicial officers contravened the constitution, which forbade the legislature to confer upon any court or judge the power of appointment to office. The opinion reads:

"The question here presented is whether the jury commissioners created by the act now under consideration are officers of the state, or whether they are in fact, like jurors themselves, mere officers of the court, such as commissioners in chancery, and, in a general sense, attorneys. We think there can be no doubt that such commissioners belong to the latter class, and go to make up a part of the judicial machinery, such as commissioners in chancery, general and special receivers, and other similar officers. Jurors are themselves, in a certain sense, officers of the court; and this special commission is only a legislative device intended to aid the court in selecting them." (Page 184.)

In the case of *State v. Kendle,* 52 Ohio St. 346, it was said:

"So as to these jury commissioners: They are appointed by the common pleas judges to assist in the administration of justice, as are masters, commissioners and court constables. They are but handmaids of the court in the selection of judicious and discreet persons to serve on such juries, as are required in the trial of causes and the presentment of indictments. . . . It

is not doubted but that the judges might be authorized to select the jurors to be returned in all cases, as they are in some. As then the duty might properly be performed by the court, no good reason is perceived why the court may not be authorized to appoint suitable persons to assist it in performing the duty, as is done in many similar cases." (Page 356.)

True, the legislature usually intervenes, as it may rightfully do, and provides machinery for supplying the court with jurors. Sometimes the judges themselves are made members of the body designated to select jurors. (See *Commonwealth v. Manfredi, Appellant,* 162 Pa. St. 144; *The State v. Squaires,* 2 Nev. 226.) Frequently it is left to the judges to make the selection personally when other measures are inadequate or fail, as indicated in *State v. Kendle, supra,* and as they do in this state. But whatever regulations the legislature may make, and whatever aids the legislature may furnish, the selecting of persons from the inhabitants of the proper territory to sit as jurors for the trial of issues of fact in court forms a department of the business of the court coördinate with that of hearing and deciding, and consequently can not be classified as "administrative" in origin, purpose or character, in the true sense in which that term is employed in constitutional law.

After his term had commenced the plaintiff was called upon to exercise a power which already inhered in his office. Could he receive extra compensation for the service? When a public official takes office he does so understanding that every dormant duty lying within the scope of his office may be awakened to full vigor at some time within his term. Should that which is always within the range of possibility occur, he must perform the service required without additional compensation, unless the legislature has the power and sees fit to allow him extra pay. The law is so understood by all the courts and text-writers, and was so established before the convention met which framed the con-

stitution of Kansas. In the case of *The People v. The Supervisors of New York,* 1 Hill [N. Y.] 362, decided in 1841, the opinion reads:

"But should it be conceded that the statute imposed a new and onerous duty upon the district attorney, it does not follow that he is entitled to any additional compensation on that account. By charging the attorney with the duty of suing for fines, without making provision for the payment of costs, the legislature has, in effect, declared that the salary of the officer is to be deemed the compensation for these, as well as for other, services. It is impossible for a salary officer to make title to an increased compensation on the sole ground that a new duty has been cast upon him by the legislature. There are few state officers, whether executive or judicial, who have not often been charged with new duties, and yet no one has, I presume, ever thought that this gave him a legal title to increased compensation." (Page 366.)

In the case of *Asa Andrews in Error v. United States,* 2 Story (U. S. C. C.) 202, decided by Mr. Justice Story in 1842, while on circuit duty, it was said:

"But where duties are required to be performed by a collector or other public officer, strictly official, and falling within the ordinary range thereof, there, although they may be conferred by laws subsequently passed, after he came into office, or may be cumulative upon the original duties of the officer, he must be deemed to take and hold the office *cum onore.*" (Page 208.)

In the case of *Evans v. City of Trenton,* 24 N. J. Law, 764, decided in 1853, it was said:

"It is a well-settled rule that a person accepting a public office with a fixed salary is bound to perform the duties of the office for the salary. He can not legally claim additional compensation for the discharge of these duties, even though the salary may be a very inadequate remuneration for the services. Nor does it alter the case that by subsequent statutes or ordinances his duties are increased and not his salary. His undertaking is to perform the duties of his office, whatever they may be, from time to time during his continuance in office, for the compensation stipulated—whether these duties are diminished or increased. Whenever he

considers the compensation inadequate, he is at liberty to resign. . .· . This rule is of importance to the public. The successful effort to obtain office is not unfrequently speedily followed by efforts to increase its emoluments; while the incessant changes which the progressive spirit of the times is introducing effects, almost every year, changes in the character, and additions to the amount, of duty in almost every official station; and to allow these changes and additions to lay the foundation of claims for extra services would soon introduce intolerable mischief. The rule, too, should be very rigidly enforced. The statutes of the legislature and the ordinances of our municipal corporations seldom prescribe with much detail and particularity. the duties annexed to public offices, and it requires but little ingenuity to run nice distinctions between what duties may and what may not be considered strictly official; and if- these distinctions are much favored by courts of justice, it may lead to great abuse." (Pages 766, 767.)

In order to preclude all possibility of mischief of this character the framers of the Kansas constitution provided that the compensation of justices of the supreme court and of judges of the district courts should not be increased during their respective terms of office, prohibited the granting to them of fees and perquisites outside of or additional to salary, and forbade them to hold any other office of profit or trust under the state or under the United States. Beyond this, they were forbidden to practice their profession in any of the courts of the state during their continuance in office, so that, so far as remuneration for services beyond salary is concerned, there is written above the portal of the judicial office in Kansas the inscription which Dante read at the top of the gate of hell: "Leave every hope, ye who enter!"

In the case of *Hall v. Hamilton,* 74 Ill. 437, the legislature had empowered circuit judges to interchange with each other and to hold branch courts in other circuits, and had provided a compensation of $10 per day for the service, additional to the salary received—a

clear case of extra pay for extra labor performed by judges in disposing of business not belonging to their circuits. The opinion reads:

"The sixteenth section of the judiciary article of our constitution is this: 'From and after the adoption of this constitution judges of the circuit courts shall receive a salary of $3000 per annum, payable quarterly, until otherwise provided by law. And after their salaries shall be fixed by law they shall not be increased or diminished during the terms for which said judges shall be respectively elected; and from and after the adoption of this constitution no judge of the supreme or circuit courts shall receive any other compensation, perquisite or benefit, in any form whatsoever, nor perform any other than judicial duties to which may belong any emoluments.' This language is as full, clear and comprehensive as could be well conceived to prevent supreme and circuit judges from receiving any other compensation than their salaries, under any name or pretense whatever, for the discharge of any duty pertaining to their offices. And it is prohibitory on the judges from receiving the compensation for the performance of such duties except their salary. It also prohibits the general assembly from providing any other." (Page 442.)

(See, also, *Bailey v. Kelly,* 70 Kan. 869.)

The statute of 1907 is constitutional, and obliged the plaintiff to render the services indicated, but the provision for an increased salary did not apply to him because the statute took effect while he was serving an unexpired term.

The writ is denied.