# Richmond.

## C. LEE MOORE v. C. LEE MOORE, AUDITOR OF PUBLIC ACCOUNTS.

### March 17, 1927.

1. MANDAMUS—*Petition for Mandamus by State Auditor as an Individual Against Himself as State Auditor—Declaratory Judgment Act.*—The instant case was a petition for mandamus to compel the Auditor of Public Accounts to issue his warrant in favor of the petitioner, who was the Auditor of Public Accounts, for compensation claimed to be due him under Acts of 1924, page 460. The Supreme Court of Appeals entertained some doubt as to whether, at common law, the Auditor, as an individual could prosecute a writ of mandamus against himself as Auditor; but did not find it necessary to pass upon the question, as the court held that the proceeding was permissible under the declaratory judgment act, Code of 1924, sections 6140a to 6140h, which apparently includes all controversies and specifically controversies involving the interpretation of statutes.

2. PUBLIC OFFICERS—*Increase of Salary During Term—Constitutional Limitation—Officer's Duties Changed—New Duties.*—A constitutional provision forbidding the change of the compensation of an offical during his term of office is inexorable. It admits of no exceptions and it affords no opportunity for evasion by the legislature or other body. But such a constitutional provision does not prohibit the legislature from changing the duties of public officers by either adding to or taking from them. And where new duties are imposed upon a public officer which are not within the scope of his office, and extra compensation is provided therefor, such increase in compensation is not within a constitutional provision prohibiting any increase in the compensation of any officer during his term of office.

3. PUBLIC OFFICERS—*Increase of Salary During Term—Constitutional Limitation—Auditor of Public Accounts—Acts of 1924, Page 460, Increasing Auditor's Salary—Case at Bar.*—By Acts of 1924, page 460, the method of assessing and collecting inheritance taxes was radically changed, and the duties of the local commissioners, clerks and treasurer, in this respect, were transferred to the Auditor of Public Accounts. These additional duties were not in the scope of the Auditor's office.

  *Held:* That it was proper to provide additional compensation to the Auditor for the performance of these duties and that such provision

was not invalid under Constitution of 1902, section 83, providing that there shall be no change in salary during an officer's term of office.

4. Statutes—*Constitutionality—Presumption of Constitutionality.*—In the absence of a clear violation of a constitutional inhibition, the courts should assume that legislative discretion has been properly exercised.

5. Auditor of Public Accounts—*Scope of Office—Duties in Regard to Inheritance Taxes Formerly Performed by Local Commissioners, Clerks, Treasurer and Courts.*—The duties specifically imposed upon the local commissioners, clerks, treasurers and courts, throughout the Commonwealth, prior to Acts of 1925, page 460, in regard to the assessment and collection of inheritance taxes, could not be said to be within the scope of the duties of the Auditor of Public Accounts. The very fact that these duties were imposed upon other officials is most persuasive in support of the view that they were not germane to the duties of the Auditor. Acts of 1924, page 460, transferred the duties of numerous local officials to the Auditor, thus relieving the State from their fees, and it would be trifling with language to say that these were not additional duties for which the General Assembly could and should provide reasonable compensation.

Original application for mandamus.

*Mandamus awarded.*

The opinion states the case.

*J. Vaughan Gary,* for the petitioner.

*John R. Saunders, Attorney General* and *Leon M. Bazile* and *Lewis H. Machen, Assistant Attorneys General,* for the respondent.

Per Curiam.

This is a petition for mandamus to compel the Auditor of Public Accounts to issue his warrant in favor of the petitioner for compensation claimed to be due him under an act of the General Assembly approved March 24, 1924 (Acts 1924, page 460), amending and re-

enacting section 44 of the tax bill, relating to inheritance taxes.

Subsection 20 of section 44, which is to be construed, reads: "The expense of the execution of this act shall be paid by the Auditor of Public Accounts out of the funds collected hereunder, but the Auditor shall not, under the authority of this section, pay out of said funds the salaries of any employees, and the Auditor of Public Accounts shall receive one thousand dollars per annum, payable out of the funds collected hereunder, as compensation for additional duties hereby imposed upon him."

The Attorney General having expressed some doubt as to the validity of the payment of $1,000 per annum to the Auditor, and the Auditor being unwilling to determine a question affecting his own compensation, has applied to this court for mandamus directing the payment.

[1] There may be some doubt as to whether the Auditor, as an individual, can prosecute a writ of mandamus against himself, as Auditor; but the situation is peculiar, and is entitled to have the statute construed. No other adequate remedy has been suggested.

Without passing definitely upon this question of procedure, as at common law, it seems to us that the proceeding should be held to be permissible under the declaratory judgment act, Acts 1922, page 902; Code 1924, sections 6140a to 6140h, inclusive. That statute authorizes binding adjudications of right, and provides that no action or proceeding shall be open to objection on the ground that a judgment or order merely declaratory of the right is prayed for. It apparently includes all controversies and specifically controversies involving the interpretation of statutes.

*Patterson's Ex'ors v. Patterson*, 144 Va. 113, 131 S. E. 217.

The last section of that act, Code, section 6140h, reads thus: "This act is declared to be remedial; its purpose is to afford relief from the uncertainty and insecurity attendant upon controversies over legal rights, without requiring one of the parties interested so to invade the rights asserted by the other as to entitle him to maintain an ordinary action therefor; and it is to be liberally interpreted and administered with a view to making the courts more serviceable to the people."

We know of no sound reason for doubting its application to this case, even if at common law the remedy by mandamus would be inapplicable or inadequate.

The question here raised, then, requires the construction of subsection 20 of section 44 of the tax bill, hereinbefore quoted, as affected by Constitution, section 83, which reads: "The salary of each officer of the executive department, except in those cases where the salary is determined by this Constitution, shall be fixed by law; and the salary of no such officer shall be increased or diminished during the term for which he shall have been elected or appointed."

Such constitutional limitations upon the power of legislatures to increase salaries are not uncommon. There have been many cases in which such provisions have been construed.

[2] The general construction of such limitations upon legislative powers is thus expressed in 22 R. C. L., section 229, page 534: "A constitutional provision forbidding the change of the compensation of an official during his term of office is inexorable. It admits of no exceptions and it affords no opportunity for evasion by the legislature or other body. But such a constitutional provision does not prohibit the legislature from changing the duties of public officers by either adding to or taking from them. And where new duties are imposed

upon a public officer which are not within the scope of his office, and extra compensation is provided therefor, such increase in compensation is not within a constitutional provision prohibiting any increase in the compensation of any officer during his term of office."

The cases are collected in notes to *Moore* v. *Nation*, 80 Kan. 672, 103 Pac. 107, 33 L. R. A. (N. S.) 1115, 18 Am. & Eng. Ann. Cas. 403, and to *Groesbeck* v. *Fuller, Auditor General*, 216 Mich. 243, 184 N. W. 870, 21 A. L. R. 256, Ann. Cas. 1918E, 1067.

[3] There have been local inheritance taxes imposed upon estates of decedents, residents of Virginia, for many years, and this is the subject of section 44 of the tax bill with its twenty-one subsections. By amendment of March 20, 1924 (Acts 1924, page 460), which is to be construed, the method of assessment and collection of such taxes was radically changed. Theretofore it had been the duty of the local commissioner to investigate and report to the local court or clerk the value of the estate of every decedent whose gross estate amounted to more than $1,000, and also the value of the estates of those amounting to less than $1,000, if directed by the court. With that report as a basis, the tax was determined by the court or clerk, and then collected by the local treasurer, who accounted therefor to the Auditor. The commissioner was allowed a fee of one-tenth of one per centum of the gross estate, provided that his fee should not be less than five dollars nor more than fifty dollars in any case, but for special services the court might allow greater compensation to the commissioner. The clerk of the court was allowed a fee of $2.50 for entering the required order which determined the tax, and the local treasurer was allowed a commission of five per centum of the tax for collecting it. Thereafter a copy

of the order so fixing the tax was required to be certified
to the Auditor of Public Accounts. This so that the
Auditor might charge the local treasurer with the
amount of the tax, and for information so that the
Auditor might institute legal proceedings for the cor-
rection of the assessment, if he thought it erroneous.
The Auditor was also authorized to approve certain
compromise settlements wherever in exceptional cases
there were such compromises.

Reverting now to the section as amended in 1924, it
appears that additional and different duties are im-
posed upon the Auditor of Public Accounts. The
local clerks and treasurers are relieved of all of their
duties in connection with the assessment and collection
of such taxes, and except where legal controversies
thereafter arise, the jurisdiction of the court is not
invoked. The personal representative of the decedent
is required to report directly to the Auditor, without
the intervention of the court or the local treasurer,
the Auditor primarily determines the tax and collects
it. This change of method has resulted in relieving
the funds of the Commonwealth from the fees hereto-
fore paid to the clerks and treasurers. It is said that
during the fiscal year ending June 30, 1926, the gross
amount of the taxes so directly assessed and collected
by the Auditor amounted to $298,476.06, upon which
the commissions of the local treasurers alone, under
the former statute, would have been $14,923.80. The
General Assembly, apparently because of the economy
effected by the change in the system, the consequent
increase in the labor and responsibility, together with
the change in the nature of the duties required of the
Auditor, determined, it is fair to say, that these addi-
tional duties were not within the scope of his office,
and that it was proper to provide additional compensa-
tion to him for their performance.

With these facts in mind, what are the presumptions?

These expressions from Cooley on Constitutional Limitations (6 ed.), page 217, are helpful:

"The constitutionality of a law, then, is to be presumed because the legislature, which was first required to pass upon the question, acting as they must be deemed to have acted, with integrity, and with a just desire to keep within the restrictions laid by the Constitution upon their action, have adjudged that it. is so. They are a co-ordinate department of the government with the judiciary, invested with very high and responsible duties, as to some of which their acts are not subject to judicial scrutiny, and they legislate under the solemnity of an official oath, which it is not to be supposed they will disregard.

[4] "It must, therefore, be supposed that their own doubts of the constitutionality of their action have been deliberately solved in its favor, so that courts may, with some confidence, repose upon their conclusion as one based upon their best judgment." In the absence of a clear violation of a constitutional inhibition, the courts should assume that legislative discretion has been properly exercised.

The leading case cited in the careful brief of the Attorney General, against the contention of the petitioner, is *Moore* v. *Nation* (1909), 80 Kan. 672, 103 Pac. 107, 23 L. R. A. (N. S.) 1115, 18 Ann. Cas. 397. In that case, in which the legislature of Kansas imposed the duties of a jury commissioner upon the judges of the district courts, and authorized them to appoint jury clerks to assist them in the performance of such duties, also provided, for these services, an addition of $500 per annum to each judicial salary. The constitutional inhibition in Kansas at that time, after fixing the salary, prohibiting any increase during the term, also provided,

that "such justices or judges shall receive no fees or perquisites nor hold any other office of profit or trust under the authority of the State, or the United States, during the term of office for which such justices or judges shall be elected." It was there held that the additional duties with reference to preparing and revising lists of jurors were within the scope of the judicial office, and that the increased compensation was within the inhibition of the constitutional provision from which we have quoted. The case, however, clearly recognizes the rule that such inhibitions do not prevent such increases if the additional duties are not within the scope of the office.

Possibly the most carefully considered case sustaining such additional compensation is *Groesbeck* v. *Fuller*, *supra*. There the legislature created a State administrative board. The Governor was made chairman, and the other members were, the Secretary of State, the State Treasurer, the Auditor General, the Attorney General, the State Highway Commissioner, and the State Superintendent of Public Instruction. Their duties were to exercise general supervisory control over the functions and activities of all administrative departments, boards, commissions and officers of the State, and all State institutions. In addition they were to perform all of the duties theretofore vested by law in the State Budget Commission, the State Purchasing Agent, and the advisory board in the matter of State purchasing, and also control over the system of State accounting and the manner of handling it. Without further specification, it may be said that they had general supervision over all of the State's activities. The State Treasurer, the Secretary of State and the Auditor General, for all the duties prescribed for and imposed upon them as members of this board, were given com-

pensation at the rate of $2,500 per year, in addition to their salaries as heads of their respective departments. In a very elaborate opinion, in which many supporting cases are cited, the court held that the claimants were entitled to the additional compensation.

In *Thomas* v. *O'Brien*, 138 Ky. 770, 129 S. W. 103, a statute was held not to contravene such a constitutional provision which required the magistrates of a fiscal court to serve as a building committee, etc., and provided compensation therefor. The court based its decision on the fact that as the magistrates were not acting on such committees by virtue of their office, they were entitled to compensation just as anyone else would be who performed the service.

In *State, ex rel. Seattle*, v. *Carson*, 6 Wash. 250, 33 Pac. 428, it was held that a statute imposing on a county treasurer the additional duty of assessing and collecting city taxes, and providing additional compensation therefor, was not violative of such a constitutional provision against increased compensation, for the reason that the duties imposed were entirely outside of the former duties of a county treasurer, for which the previous salary had been fixed.

In *Love* v. *Baehr*, 47 Cal. 364, it was held that a statute requiring the Attorney General to serve as a member of the State board of examiners, and providing compensation therefor, was not within such an inhibition of the State Constitution.

In *Lewis* v. *State*, 11 Ohio C. D. 647, 21 Ohio C. C. R. 410, wherein it appeared that an auditor acting pursuant to statute as a member of a decennial county board, of equalization, rendered services neither incident nor germane to his official duties, it was held that he might be compensated therefor without violating a constitutional prohibition against increased salaries.

The most recent case we know of is *Tayloe* v. *Davis*, 212 Ala. 282, 102 So. 433, 40 A. L. R. 1057.    There a new budget law created the State Budget Commission, composed of the Governor, as chairman, the Attorney General, the State Auditor and the Chief Examiner of Accounts.    The General Assembly allowed additional compensation for services upon the budget commission. The court held that there was no violation of the constitutional inhibition against increasing salaries during the term.    This, which is said there, is quite appropriate in this case:    "We may say that while a public officer takes his office *cum onere*, and is required to perform the duties from time to time prescribed by law, there is inherent justice in granting compensation for the increased labor and responsibility imposed by new legislation.    The just legislator may be rather disposed to create a new office, than to impose unexpected new burdens on an existing officer without compensation.    Nor do we think any sound objection obtains to conferring new duties, with compensation, upon the officer who, by reason of knowledge and experience, is best fitted to the new task.    Fitness for the new duties growing out of experience in former official labors may furnish the opportunity to get efficient service at minimum expense to the State. That the duties required of members of the budget commission are substantial, that they involve added labor and responsibility, is not questionable.    There appears no purpose to create a mere colorable pretext to increase salaries.    They are new duties, joint or cooperative duties, having no existence before.    They become incident to the office only by their creation and assignment to the office."

[5] Applying the principle and reasoning of these precedents to the facts which we have here, we conclude

that the General Assembly did not violate the constitutional inhibition in providing for the additional compensation for the Auditor. The statute was a measure of economy; it transferred to and imposed upon the Auditor duties theretofore imposed on certain local officials, whose aggregate fees far exceeded the additional compensation so provided for the Auditor. Certainly it cannot be fairly said, it seems to us, that the duties specifically imposed upon local commissioners, clerks, treasurers and courts throughout the Commonwealth, prior to the act of 1924 under consideration, could at the same time be held to be within the scope of the duties of the Auditor of Public Accounts. The very fact that these duties were imposed upon other officials is most persuasive in support of the view that they were not germane to the duties of the Auditor. The statute transferred the duties of numerous local officials to the Auditor, thus relieving the State from their fees, and it seems to us to be trifling with language to say these were not additional duties for which the General Assembly could and should provide reasonable compensation.

Our conclusion, then, is that the General Assembly did not exceed its power in making the provision for the Auditor of $1,000, per annum, and that he is entitled thereto. We feel that it would approach a misuse of our power to undertake to nullify the legislative judgment so soundly based which has already been pronounced by the General Assembly on the questions involved.

*Mandamus awarded.*