# Wytheville

BOARD OF SUPERVISORS OF AMHERST COUNTY V. E. R. COMBS,
STATE COMPTROLLER, AND BOARD OF SUPERVISORS
OF CAMPBELL COUNTY.

June 15, 1933.

Present, All the Justices.

The opinion states the case.

*Edward Meeks* and *W. H. Carter,* for the petitioners.

*Wilson, Kemp & Hobbs* and *John R. Saunders, Attorney-General,* and *Edwin H. Gibson* and *Collins Denny, Jr., Assistant Attorneys-General,* for the respondents.

CHINN, J., delivered the opinion of the court.

This is an original petition for a writ of mandamus filed in this court by the board of supervisors of Amherst county against E. R. Combs, State Comptroller, and the board of supervisors of Campbell county.

The proceeding is founded upon the provisions of section 4 of an act of the General Assembly relating to the appropriation and distribution of the revenues derived from the tax levied on motor vehicle fuel (commonly called the "gasoline tax"), approved March 26, 1923 (ch. 107), as amended and re-enacted by chapter 45 of the Acts of 1930.

The pertinent provisions of the last mentioned act (found on page 42, ch. 45, Acts of 1930) read as follows: "Thirty per centum of the revenue derived from the tax levied as aforesaid, is hereby appropriated primarily for the maintenance of the roads and bridges of the several counties of this State, and shall, on and after January first, nineteen hundred and thirty-one, be apportioned and distributed among the several counties in proportion to area as one factor, population as one factor, and the total of all State taxes and all local levies including levies on public service corporations collected by the county treasurers in their respective counties, during the next preceding fiscal year, as one factor, giving equal consideration to each of the three factors, the factors of area and population to be always determined by the latest United States census; provided, however, that where a city with a population of over one hundred thousand lies partly in two counties, one-half of the population of such city shall be credited to each county; and where two or more cities having a combined population of more than one hundred thousand, lie wholly within one county, such county shall be given credit for only one-half of the combined population of such cities; and where a city with a population of between twenty-five thousand and fifty thousand, lies partly in two counties, one-half of the population of such city shall be credited to each of said counties; and the population of all other cities in the State shall be credited to the counties in which they are located, respectively; * * *

No part of the said thirty per centum of such revenue shall be paid to, or received by, the State Highway Commission. * * *"

The petition alleges that the city of Lynchburg has a population of between 25,000 and 50,000; that the city lies partly in Amherst county and partly in Campbell county, and in considering population as a factor in the distribution of the proceeds of the gasoline tax among the counties of the State, Amherst county is, under the provisions of the act, entitled to be credited with one-half of the population of said city; that the State Comptroller, however, during the year nineteen thirty-one, had failed to accord Amherst county any credit upon this basis of population, but in making monthly distribution of these revenues had credited Campbell county with the whole of the population of the city of Lynchburg, thereby causing that county to receive during the year 1931 over $6,000 which should have been distributed to Amherst county.

The petition prays that E. R. Combs, State Comptroller, and the board of supervisors of Campbell county be made parties, and be required to answer the same; that a peremptory writ of mandamus be issued by this court, directing the defendants "in the future to distribute the tax derived from motor vehicle fuel, in accordance with the said acts of 1930, page 42, ch. 45; that Amherst county be given credit for one-half of the population of the city of Lynchburg as provided for in said acts, and in keeping with all other provisions thereof, and that said petitionees pay to Amherst county all back pay or arrears in said tax, to which it is entitled had the law been so observed as it should have been, and deduct or credit the future payments to Campbell county until the fund is equalized or adjusted upon a legal basis; that the said Comptroller be enjoined, restrained and ordered from paying any further sums to Campbell county that would in any way jeopardize the petitioner's contention herein set up; that the said fund be fully preserved and conserved to protect the contention of the petitioner; that

all sums be paid to Amherst county in arrears, as well as future payments; and that all such other, further and general relief be granted to your petitioner as the nature of the case may require, or may be meet and proper."

The defendants filed their separate answers, and the board of supervisors of Campbell county filed a motion in writing to dismiss the petition on the ground that mandamus cannot properly issue in this case because, if awarded, neither of the respondents could comply with the writ.

We think the motion should be sustained. As seen, the writ asked for in the petition is, that the defendants be directed "in the future to distribute the tax derived from motor vehicle fuel, in accordance with the said Acts of 1930, page 42, ch. 45," and that, in making such distribution, Amherst county be given credit for one-half of the population of the city of Lynchburg.

It should first be noted that the statute upon which the petition is based provides that the proceeds of the gasoline tax thereby appropriated "for the maintenance of the roads and bridges of the several counties of the State" shall be apportioned and distributed monthly among said counties by the Comptroller, and gives no authority to the boards of supervisors of said counties to make distribution of such proceeds. Mandamus does not, therefore, lie against the board of supervisors of Campbell county, as prayed for in the petition.

High on Extraordinary Legal Remedies, section 1, says: "The modern writ of mandamus may be defined as a command issuing from a common-law court of competent jurisdiction, in the name of the State or sovereign, directed to some corporation, officer or inferior court, requiring the performance of a particular duty therein specified, which duty results from the official station of the party to whom the writ is directed, or from operation of law." And to warrant the issuance of the writ it must appear that it is within the power of the defendant, as well as his duty, to do the act in question. 2 Spelling on Extraordinary Relief, section

1369; High on Extraordinary Legal Rem., section 9; *Tyler* v. *Taylor, Auditor,* 29 Gratt. (70 Va.) 765.

At the time of the passage of the aforesaid act of 1930 the public roads of the State receiving appropriations from the State treasury were segregated by law into two general systems or classes, commonly and respectively known as State highways, and county or "State aid" roads. State highways were placed under the exclusive jurisdiction and control of the State Highway Commission, while county roads were, generally speaking, under the supervision and control of the boards of supervisors of their respective counties, who alone had authority to expend the funds appropriated by said act for the maintenance of the roads and bridges of said counties.

By an act approved March 31, 1932, however (Acts 1932, page 872, ch. 415), the General Assembly abolished the county road system and created "a secondary system of State highways" (section 1) consisting of all the public roads, bridges, etc., in the several counties, not included in the State highway system; providing that from and after July 1, 1932, the control, supervision, management and jurisdiction over said secondary system should be vested in the State Department of Highways, and the maintenance and improvement, including construction and reconstruction thereof, "shall be by the State under the supervision of the State Highway Commissioner."

The act further provides (section 4) that "From and after July 1, 1932, the amount on hand from and the proceeds of, the motor vehicle fuel tax available for apportionment among the several counties of the State under the law with reference to the levy, collection and expenditure of motor vehicle fuel taxes, shall be set aside as a fund for the secondary system of State highways and disbursed by the State under the supervision of the State Highway Commissioner for the maintenance and improvement including construction and reconstruction, of the secondary system of State highways. An amount equal to the aggregate of such tax

apportioned among the several counties of the State for the calendar year 1931, including the additional amount for equalization as provided by law for that year, shall be allocated for expenditure and expended in the maintenance and improvement, including construction and reconstruction, of the secondary system of State highways in the several counties of the State, upon the same basis of apportionment upon which the motor vehicle fuel tax was apportioned among the several counties of the State for the calendar year of 1931, including such equalization."

Provisions were made in said act for elections to be held by the counties for determining whether or not they would respectively withdraw from the operation of the act. Neither Amherst nor Campbell county withdrew from the operation thereof.

The petition in this case was filed on January 5, 1932, and submitted to this court on the pleadings and depositions taken and filed by the parties at the January term, 1933. It appears from the record that at the time the cause was presented for hearing the State Comptroller had distributed all the revenues that were apportionable and distributable among the several counties of the State under the act of 1930, for the calendar year 1931, and also all such revenues available from January 1, 1932, to July 1, 1932, when the act of March 31, 1932, creating and providing for the new system of highways took effect. There is not, therefore, and has not been since July 1, 1932, any fund from or out of which the State Comptroller could comply with the writ of mandamus prayed for, commanding him "in the future to distribute the tax derived from motor vehicle fuel, *in accordance with the said Acts of* 1930, *page* 42, *ch.* 45."

Furthermore, it being provided by the act of 1932 that all revenues derived from the motor vehicle fuel tax, available for apportionment among the several counties of the State, shall be set aside as a fund for the secondary system of State highways and disbursed under the super-

vision of the State Highway Commissioner, it seems evident that the authority vested in the State Comptroller with respect to such revenues by the act of 1930 has been withdrawn, and he no longer has any power or control over the distribution of these revenues. In view of the above facts and the change in the law relating to the subject, it is obvious that the writ of mandamus prayed for by the petitioner would, if awarded, be unavailing and wholly nugatory.

As said in *Tyler* v. *Taylor, Auditor,* 29 Gratt. (70 Va.) 765, "to warrant the court in granting the writ against a public officer such a state of facts must be presented as to show that the relator has a clear right to the performance of the thing demanded, and that a corresponding duty rests upon the officer to perform that particular thing. See High's Legal Remedies, sections 7, 9, 32, and cases there cited."

"The person applying for the relief must show a clear legal right to have the duty sought to have coerced, *done in the manner specified in the application and by the defendant.*" (Italics supplied.) 2 Spelling on Ex. Relief, section 1369.

In the case of *Town of Strasburg* v. *Winchester, etc., R. Co.,* 94 Va. 647, 27 S. E. 493, when upon application to this court for a writ of mandamus it appeared that the defendant, if ordered to construct its road to Strasburg, would be financially unable to obey, Judge Riely said:

"The record discloses the fact that if the writ were awarded as prayed for, the court would be powerless to make it effectual, and this constitutes an insuperable objection to granting it.

" 'It is well settled as a fundamental principle in the law of mandamus,' says an able text-writer, 'that courts will not grant this extraordinary remedy where to do so would be fruitless and unavailing. If it appear that the writ would be ineffectual to accomplish the object in view, either from the want of power of the respondent to perform the act required, or on the part of the court granting the writ to

compel its performance, the court will refuse to interfere.'
2 Spelling on Ex. Relief, section 1377."

In the recent case of *Tyler* v. *Combs, ante,* page 449, 168
S. E. 454, application was made to this court for a writ of
mandamus to compel the State Comptroller to issue a war-
rant for the payment out of the State treasury of certain
fees which the petitioner claimed to be due him by virtue
of an existing statute. It was held that although the Com-
monwealth is liable for the fees claimed by the petitioner,
mandamus should be denied, as it appeared that no appro-
priation had been made for the payment of such fees.

In *Flanagan* v. *Central Lunatic Asylum,* 79 Va. 554, while
the proceedings for a writ of mandamus were pending in
the Supreme Court of Appeals, there was a change in the
law, making it beyond the power of the defendants to com-
ply with the writ, if awarded. It was held that, as the
petitioner at the time of the hearing had no longer any
rights to protect, or wrongs to redress, which could be ef-
fected by any order that could then be entered, the court
would not decide the questions involved, the same having
become moot. The petition was accordingly dismissed. See
also to same effect: *Franklin* v. *Peers, Clerk,* 95 Va. 602,
29 S. E. 321; *Dickinson* v. *Armstrong,* 126 Va. 178, 100 S.
E. 813; *Gregory* v. *Hubard,* 123 Va. 510, 96 S. E. 775.

In 38 Corpus Juris, page 551, the principle is thus
stated: "When the writ would be nugatory or unavailing it
should be denied; and hence the writ will be denied where
its issuance would be useless or unavailing, by reason of
events occurring subsequent to the commencement of the
proceedings, or where the lapse of time has rendered the
relief sought nugatory, or where the writ cannot be en-
forced."

In addition to the writ of mandamus specifically
asked for, the petitioner also prays that the apportionments
and distributions of the motor fuel tax made by the Comp-
troller be adjusted, and that the Comptroller and Campbell
county be required to pay to Amherst county all back pay

or arrears in said tax to which it is entitled had the law been so observed as it should have been; which it is claimed in petitioner's brief amounts to the sum of $9,098.71. The petition also prays for an injunction and "general relief." The supplementary relief prayed for as above noted does not come within the scope or purpose of mandamus, and cannot be granted in these proceedings.

"A mandamus is always granted to compel the performance of some duty which has not been done * * *. It is not granted to undo an act already done. The court will not allow the validity of the act done to be tried in this way. 'We grant it,' said Lord Campbell, 'when that has not been done which a statute orders to be done; but not for the purpose of undoing what has been done.'" Short on Mandamus, page 269. *Harrison* v. *Barksdale,* 127 Va. 180, 102 S. E. 789.

"Mandamus is prospective merely; accordingly where redress for the past privation of a right as well as restoration in future is sought, a bill in equity is the proper remedy. It is not a preventive remedy; its purpose and object is to command performance, not desistance, and is a compulsory, as distinguished from a revisory writ; it lies to compel, not to revise or correct action, however erroneous it may have been, and is not like a writ of error or appeal, a remedy for erroneous decisions." 18 R. C. L., page 114.

Nor is the extraordinary writ of mandamus ever granted to enforce a right when there is any other adequate legal remedy available to the applicant. (High's Ex. Leg. Rem., section 10; 2 Spelling on Ex. Relief, section 1374.) If Amherst county has the right to require the accounting and obtain the judgment sought in the petition, an action of assumpsit would afford both an adequate and appropriate remedy for that purpose.

It is earnestly insisted by counsel for the petitioner that even though the writ of mandamus prayed for cannot, for any reason, be properly awarded in these proceedings, Amherst county is, nevertheless, entitled to have its rights un-

der the act of 1930 finally adjudicated by this court, under the provisions of the declaratory judgment act (Acts 1922, page 902, ch. 517) ; and to support the proposition *Moore* v. *Moore,* 147 Va. 460, 137 S. E. 488, 51 A. L. R. 1517, is cited.

In that case Mr. Moore, who was then Auditor of Public Accounts, being in doubt as to whether a statute allowing him certain compensation was constitutional, filed in this court a petition for a writ of mandamus to compel himself, as Auditor, to issue a warrant for the compensation in question. After commenting upon the unusual procedure, the court held that in view of the fact that the peculiar situation required a construction of the statute, and there seemed to be no other adequate remedy, the proceeding was permissible under the declaratory judgment act; and after upholding the constitutionality of the statute, proceeded to award the writ.

Without discussing the question of the jurisdiction of this court in an original mandamus proceeding, which may be said to be limited to the sole inquiry of whether the particular writ asked for should, or should not, be granted, it must be noted that the case relied on is distinguishable from the one in judgment, both with respect to the facts and the character of the relief prayed for. In the *Moore Case* there was no other remedy, and the writ applied for was enforceable because the Auditor could readily comply with its terms. The redress sought by the petitioner also, in all other respects, came within the scope of mandamus and the jurisdiction of the court, and there was no obstacle to the issuance of the writ. The instant case presents a contrary state of facts. As pointed out, the writ specifically prayed for would, if awarded, be nugatory; and as to the extraneous relief asked for, there is not only another remedy, but this court is without jurisdiction to grant it.

The mandamus is, therefore, denied.

*Mandamus denied.*