UNION REPUBLICAN PARTY ET AL., Plaintiffs and Appellants, *v.* CHARLES H. TERRY, CHAIRMAN, ETC., ET AL., Defendants and Appellees.

No. 7218.   Argued December 21, 1935.—Decided December 23, 1935.

*Bolívar Pagán* for appellants. *Samuel R. Quiñones, Francisco Susoni, Jr., Angel M. Villamil, Félix Ochoteco, Jr.,* and *Pedro M. Porrata,* for appellees.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Section 29 of the Election and Registration Law (Session Laws 1919, pp. 530, 550) provides that: "The term for the exclusion of voters from the election lists shall be comprised between the first of January and the thirty-first of July of the year in which the elections are to be held." The transcript herein was filed December 12. The brief for appellants was filed December 15. Both parties requested a prompt hearing in order that the case might be decided before the end of the present term. The case came on to be heard and was argued December 19. The brief for appellees was filed December 21. Today is the last day of the term. The time is too short for brevity in the statement of facts or for elaboration of the reasons for our conclusions.

An outgoing Attorney General wrote the Superintendent of Elections August 22, 1935, as follows:

"Sir.—I acknowledge receipt of your communication of August 7, 1935, with the request that I issue an opinion as to whether the members of the Insular Board of Elections who represent the principal parties forming a coalition are entitled to one vote or to one-half vote in the deliberations and decisions of the said Board. In this connection you also call my attention to the provisions of sections 1, 13 and 36 of the Election Law, as amended by Act No. 5, Session Laws of 1934, approved on April 2, and by Act No. 3, Session Laws of 1932, approved on July 6.

"According to Act No. 5 of April 2, 1934, the Insular Board of Elections shall consist of the General Supervisor of Elections and of three persons representing the three principal political parties of Puerto Rico and of one observer for each of the political parties which registered candidates by petition in three-fourths or more of the election districts throughout the island to the extent of ten per cent or more of the total vote cast for all the candidates for the

office of Resident Commissioner of Puerto Rico to the United States at the last preceding election. The former shall have voice and vote and the latter shall have voice but no vote in the deliberations and decisions of the Board.

"Section 13 as amended by that same Act, grants similar representation in the local election board of each election precinct. Section 36 of the Election and Registration Law, as amended by Act No. 3, Session Laws of 1932, approved on July 6 of that year, provides that any candidates may appear on two or more tickets to be voted at a general election, the right of any voter being confined, when voting, to make his mark under one general ticket only; it being provided that the result of such election shall determine the rights of the parties having a candidate for Commissioner to Washington who appears on other tickets, in the sense that there shall be considered as principal party the party that received the largest number of votes and that there shall be assigned to the other parties such rights as they might have acquired as a result of the election and in the order established in section 14 of the Act.

"Such provision as contained in section 36, *supra,* made reference to the provisions of section 14, which was also amended by that same Act, to the effect that there shall be considered only as principal parties the two political parties whose candidates for Resident Commissioner to the United States received the highest and second highest number of votes, the majority party being the party which cast the largest number of votes.

"This section was subsequently amended by Act No. 5 of April 2, 1934, in the sense of defining as principal parties the three political parties whose candidates for Resident Commissioner received the greatest number of votes cast in the last preceding election in the column of general candidates of the respective parties.

"We see then that according to this latter section of the Election Law there must be three principal political parties, viz., those which in the last preceding election received the greatest number of votes in the column of general candidates of the respective parties. This is a question of fact appearing from the record of the Insular Board where it can be so established.

"There is in section 36 a proviso reading as follows:

" '*Provided, however,* That if the two principal parties combine in any form, either by fusion or by nominating the same candidate for Resident Commissioner to Washington, or by nominating the same candidates in a majority of the senatorial or representative

districts in the Island, then the observers appointed in accordance with Sections 1, 13 and 47 of this Act by organized parties and parties by petition throughout the Island of ten per cent or more of the total vote cast for Resident Commissioner to the United States at the last preceding election shall have voice and vote in the deliberations and decisions of the Insular Board and the local Boards of Election, and shall have in all respects the same rights and obligations as are stipulated for the representatives of the principal parties; *And provided, finally,* That any tie vote in any local election board shall *ipso facto* constitute an appeal to the Insular Board of Elections on the matter, and any tie vote in the Insular Board of Elections shall be decided by the Governor of Puerto Rico.'

''The *Proviso* just transcribed took effect and was applied in the 1932 election, as there was at that time a combination of the two principal parties with the same general ticket and the same candidate for Resident Commissioner to Washington; and the result of that election, as regards the political parties, imports the definition made of them in section 14, as amended by Act No. 5 of April 2, 1934.

''In order to render consistent the provisions of the above section as amended, section 13 was amended by that same Act. By section 14, as already stated, the number of principal political parties was increased to three, that is, those which in the 1932 election and as a result thereof received the highest, second highest and third highest numbers of votes in the column of general candidates, that is, that now and from the day when that Act took effect, both the parties which formed a coalition and those which did not in the 1932 election should be considered up to the number of three for their classification as the three principal political parties according to the number of votes cast in the column of general candidates.

''We see, therefore, that at present and for the purpose of the law there is no coalition of parties but three principal political parties.

''Now, section 13, as amended by this Act, contains the following:

'' 'Whenever two principal parties form a coalition for a general election and file in the office of the Executive Secretary both general tickets with common candidates in thirty or more precincts of the Island, then each member of the coalition parties shall have one-half of a vote in the decisions of the election boards.

'' 'Likewise, should the three principal parties form a coalition, then each member of the coalition parties shall have one-third of a vote in the decisions of the election boards; and then, that is, when

the three principal parties form a coalition, the observer of the first party by petition to be registered in the next and subsequent elections in accordance with the provisions of this Act, shall have voice and vote in the decision of the election boards.'

"The above two paragraphs of section 13 referred to can only be applied prospectively.

"In either of the contingencies referred to in the said paragraphs immediate application could be made of the provisions contained therein as to the right to vote of each member of such coalition parties, rendering feasible the coalition of not only two principal parties but also that of all of them, viz., of the three principal parties recognized by law.

"The *proviso* of section 36 and the paragraphs above transcribed are apparently conflicting, that is to say, the provisions of section 36 seem as if destroying the said *proviso,* but that conclusion is not the true one.

"It is a fact that the two principal parties with representation in the Board formed a coalition in the manner prescribed in section 36 for the 1932 election, and it is also a fact that when section 14 was amended by Act No. 5 of April 2, 1934, account was taken of the result of that election for the purpose of classifying the principal political parties, and so long that, based on the result of that election, no change is made in their nature for the purpose of the composition of the Board, it is understood that the two principal political parties' existing at the time of the 1932 election continue to form a coalition and likewise the party that became an organized party for that election continues so and has in the Insular Board of Elections the representation established in the *proviso* of section 36, viz., an observer entitled to voice and vote, and any tie vote shall be decided in the form and manner provided for in said section.

"If before the date of the 1936 election, that is, after September 10 at noon, there should arise the circumstances referred to in the paragraphs of section 13 already transcribed, it is from that time on that the representatives of the principal parties in the election boards shall be entitled to voice and vote in the form and manner established in the said paragraphs, that is, if the coalition is of two principal parties their representatives shall be entitled to one-half vote, and if the coalition is of three principal parties their representatives shall be entitled to one-third vote, in the deliberations of all election boards.

''In view of the foregoing considerations it is my opinion that at present the members of the Insular Board of Elections must and do continue with the rights established in section 36, that is, that although a coalition was formed for the 1932 election, their representatives continue to be entitled to one vote in the deliberations and decisions of the Board, and the observer of the organized party or of the party by petition which took part in the said election as such shall be similarly entitled, and the vote of the representatives of the new principal parties will depend on any action that the latter may take up to the 10th of September of the election year.''

Another attorney general, newly appointed, wrote the same Superintendent of Elections September 30, as follows:

''Sir:—By letter of September 11 of the current year Mr. Frank A. Martínez, as a member of your Board, has asked me to review the opinion from this office dated August 22 of the current year, addressed to you, whereby certain provisions of the Election Law were construed and it was ruled that the members of the Insular Board of Elections who represented the coalition principal parties are entitled to a vote in its deliberations and decisions. I have carefully considered the said opinion and having noticed that its terms are conflicting with each other I consider that it is my duty and my province to review the same, which I proceed to do in the present opinion.

''Mr. Martínez encloses with the letter above mentioned a certificate issued by the Executive Secretary of Puerto Rico in which the latter officer states that both the Partido Unión Republicana and the Partido Socialista filed in his office general tickets with the same candidates in more than thirty election districts for the election held in this Island on November 8, 1932.

''In the opinion from this office to which I have above referred, the following appears:

. '' 'In order to render consistent the provisions of the above section (Section 14 is meant) as amended, section 13 was amended by the same Act (the election act of 1919 is meant). By section 14, as already stated, the number of principal political parties was increased to three, that is, those which in the 1932 election and as a result thereof received the highest, second highest and third highest numbers of votes in the column of general candidates, that is, that now and from the day when that Act took effect, both the parties which formed the coalition and those which did not in the

1932 election should be considered up to the number of three for their classification as the three principal political parties according to the number of votes cast in the column of general candidates.

" 'We see, therefore, that at present and for the purpose of the law there is no coalition of parties but three principal political parties.

" '     \*     \*     \*     \*     \*     \*     \*

" 'The above two paragraphs of section 13 referred to can only be applied prospectively.

" 'In either of the contingencies referred to in the said paragraphs immediate application could be made of the provisions contained therein as to the right to vote of each member of such coalition parties, rendering feasible the coalition of not only two principal parties but also that of all of them, viz., of the three principal parties recognized by law.

" 'The *proviso* of section 36 and the paragraphs above transcribed are apparently conflicting, that is to say, the provisions of section 36 seem as if destroying the said *proviso*, but that conclusion is not the true one.

" 'It is a fact that the two principal parties with representation in the Board formed a coalition in the manner prescribed in section 36 for the 1932 election, and it is also a fact that when section 14 was amended by Act No. 5 of April 2, 1934, account was taken of the result of that election for the purpose of classifying the principal political parties, and so long that, based on the result of that election, no change is made in their nature for the purpose of the composition of the Board, it is understood that the two principal political parties existing at the time of the 1932 election continue forming a coalition and likewise the party that became organized for that election continue so·and has in the Insular Board of Elections the representation established in the *proviso* of section 36, viz., an observer entitled to voice and vote and any tie vote shall be decided in the form and manner provided for in said section.

" 'If before the date of the 1936 election, that is, after September 10 at noon, there should arise the circumstances referred to in the paragraphs of section 13 already transcribed, it is from that time on that the representatives of the principal parties in the election boards shall be entitled to voice and vote in the form and manner established in the said paragraphs, that is, if the coalition is of two principal parties their representatives shall have one-half of a vote, and if the coalition is of three principal parties their

representatives shall have one-third of a vote, in the deliberations of all election boards.'

"For a better understanding of what we are going to say further on, it becomes necessary to transcribe first the provisions of the Election Act in force (Act No. 79 of July 23, 1919) which in my judgment are applicable to the question at issue. The following sections, among others, can be strictly applied to the point under discussion, some of them 'ad pedem literae' and others in their relevant part:

" 'Section 1.—This Act shall be known as "The Election Law."

" 'An Insular Board of Elections is hereby established, to be composed of a general supervisor of elections, as chairman, who shall be appointed by the Governor with the advice and consent of the Senate of Puerto Rico, and three persons representing the three principal political parties of Puerto Rico as hereinafter defined, and a substitute for each one of the said members, all of whom shall be appointed by the Governor at the request of the central directing bodies of said parties; *Provided,* That the central directing body of any political party that in the next and subsequent elections, registers candidates by petition in three-fourths or more of the electoral precincts throughout the island, to the extent of ten per cent or more of the total vote cast for all the candidates for the office of Resident Commissioner of Puerto Rico to the United States at the last preceding election, shall be entitled to appoint a representative and a substitute who shall be known as an *observer,* and he shall have all the privileges and rights pertaining to members of the said Board, and shall have voice but no vote in its deliberations and decisions.

" ' .    .    .    .    .    .    .    .    .    . Said Board may appoint its subordinate personnel and employees and may determine and fix their compensation within the appropriation made for that purpose by law.'

"In accordance with the above section, such as the same was in force at the 1932 election (see Act No. 3 of July 6, 1932), the Insular Board of Elections was composed of the General Supervisor of Elections and of two persons representing the two principal political parties of the Island, and of a substitute for each one of the said representatives, as well as of observers and their substitutes who might be appointed by any political party whose candidate for Resident Commissioner to Washington had received 10% or more of the total vote cast for that office in the last preceding election, or

by the central directing body of any party registering candidates for the whole Island by petition of ten per cent or more of the total vote cast for candidates for that office at the last preceding election.

" 'Section 13.—(As amended by Act No. 5 of April 2, 1934). In every electoral precinct there shall be a local election board which shall discharge the duties prescribed in this Act in addition to those legally imposed upon it by the Insular Board of Elections. Each of said local boards shall be composed of the municipal judge of the municipality to which it belongs, as chairman, three additional members, and members *pro tempore* who shall act as substitutes in case of absence of the regular members; and these regular members and members *pro tempore* shall be appointed by the central directing bodies of the three principal political parties of Puerto Rico as hereinafter defined, with the approval of the Insular Board of Elections; *Provided,* That the central directing body of any political party that in the next and subsequent elections registers candidates by petition in three fourths or more of the electoral precincts of the island, to the extent of ten per cent or more of the total vote cast at the polls for all the candidates for that office in the last preceding election, shall be entitled to appoint a representative and a substitute on each one of said boards, who shall be known as an *observer,* and he shall have all the rights and privileges pertaining to members of said local boards, and shall have voice but no vote in its deliberations and decisions.

" 'In municipalities where there is no municipal court, the justice of the peace shall be a member and the chairman of the local election board; *Provided,* That in the Capital and in the municipality of Ponce each of which has two precincts, the court officials who shall assume the functions of presiding members of the local election boards of the electoral precincts of said Capital and of said municipality of Ponce shall be the following: First precinct of the Capital, the judge of the first section of the municipal court of the Capital; second precinct of the Capital, the judge of the second section of the municipal court of the Capital; first precinct of Ponce, the judge of the municipal court of the municipality of Ponce; and second precinct of Ponce, the justice of the peace of the municipality of Ponce; *And provided, further,* That in the municipality of Utuado which also has two electoral precincts, the local election board of the first precinct shall also be the local election board of the second precinct, with the same members, substitutes and chairman.

" '    *    *    *    *    *    *    *

" 'Whenever two principal·parties form a coalition for a general election ·and file in the office of the Executive Secretary both general tickets with common candidates in thirty or more precincts of the Island, then each member of the coalition parties shall have one-half of a vote in the decisions of the election boards.'

"Such as this section prevailed in the 1932 election (see Act No. 3 of July 6, 1932) the election local boards consisted of the chairman (the municipal judge, or the justice of the peace) and of two members and their substitutes appointed by the central directive bodies of the two principal political parties of Puerto Rico, with the approval of the Insular Board of Elections and of one observer and his substitute appointed by the central directive body of any political party whose candidate for Commissioner to the United States had received ten per cent or more of the total vote cast for candidates for that office at the last preceding election, and of any party that had registered candidates for the whole Island by petition of ten per cent or more of the total vote cast for candidates for that office at the last preceding election.

" 'Section 14 (as amended by Act No. 5 of April 2, 1934).—By the term "principal parties" are defined the three political parties whose candidates for Resident Commissioner of Puerto Rico to the United States received the greatest number of votes cast in the last preceding election, in the column of general candidates of the respective parties. By the term "party by petition" is defined any political party that in the next and subsequent election registers ("may have registered" should be the term) candidates by petition in three-fourths or more of the electoral precincts throughout the Island, and to the extent of ten per cent or more of the total vote cast for all candidates for the office of Resident Commissioner of Puerto Rico to the United States in the last preceding election. Any political party which has acquired the category of *principal party* or *party by petition* shall be considered as, and entitled to the rights of, such party until its candidates in its respective column of general candidates for Resident Commissioner of Puerto Rico to the United States fails to receive in a general election the number of votes necessary to reach such category in accordance with the provisions of this section.'

"Such as the above section prevailed in the 1932 election (see Act No. 3 of July 6, 1932) by 'principal parties' were meant the two political parties whose candidates for Commissioner to the United States had received the highest and next highest numbers

of votes cast for candidates for that office at the preceding election; by 'majority party' was meant the political party whose candidate for Commissioner to the United States had received the highest number of votes cast for all candidates for that office at the preceding election; and by 'organized party' was meant a political party whose candidate for Commissioner to the United States had received ten per cent or more of the total votes cast for all candidates for that office at the preceding election. Any political party having acquired the status of 'principal party,' 'majority party,' or 'organized party' would be considered and treated as such until a candidate of such party for Commissioner to the United States should fail at a subsequent election to receive the number of votes necessary to acquire such status in accordance with the rules already stated in this section.

" 'Section 26 (as amended by Act No. 3 of July 6, 1932).—Any principal political party, or any party that cast more than ten per cent of the total vote of the Island for Commissioner to Washington at the preceding general election, shall be entitled to nominate candidates by duly-called conventions. Such conventions shall be held not later than September fifth, and the chairman and the Secretary of such conventions shall certify to the Executive Secretary, not later than twelve o'clock noon on September tenth, the names of the candidates nominated by the convention. Should any party fail to file with the Executive Secretary on or before twelve o'clock noon on September tenth, the name of any candidate for any office, then the party failing to do so shall forfeit the right to name candidates for such office or offices.

" 'No political party shall file more than one nomination for each office . . . . *Provided*, That any candidate may appear on two or more tickets to be voted at the general election; *It being und)erstood, however,* That this provision shall not be interpreted in the sense of interfering with the voters' right to vote a mixed ticket; *Provided also,* That the provisions of Section 40 of Act No. 79 of 1919, as subsequently amended by Act No. 1 of May 7, 1927, and Act No. 1 of May 5, 1928, as far as the same are in conflict with the provisions of this section, shall have no effect or value whatever; *Provided, further,* That in order to determine the rights of the parties having a candidate for Commissioner to Washington who appears on other tickets, the party that received the largest number of votes shall be considered as the principal party, and to the other parties shall be assigned such rights as they may have acquired, and in the order

established in Section 14 of this Act; *Provided, however,* That if the two principal parties combine in any form, either by fusion or by nominating the same candidate for Resident Commissioner to Washington, or by nominating the same candidates in a majority of the senatorial or representative districts in the Island, then the observers appointed in accordance with sections 1, 13 and 47 of this Act by organized parties and parties by petition throughout the Island of ten per cent or more of the total vote cast for Resident Commissioner to the United States at the last preceding election shall have voice and vote in the deliberations and the decisions of the Insular Board and the local Boards of Election, and shall have in all respects the same rights and obligations as are stipulated for the representatives of the principal parties; *And provided, finally,* That any tie vote in any local election board shall *ipso facto* constitute an appeal to the Insular Board of Elections on the matter, and any tie vote in the Insular Board of Elections shall be decided by the Governor of Puerto Rico.'

"Section 40 referred to in section 36 above transcribed provides that no person shall be a candidate for more than one office, nor for the same office on two or more tickets.

" 'Section 47 (as amended by Act No. 5 of April 2, 1934).—In each polling place of each precinct there shall be a poll board composed of three inspectors and three clerks appointed, respectively, by the three principal political parties, with such powers and duties as are hereinafter provided; *Provided,* That the central directing body of any party by petition may appoint a representative, to be known as an *observer,* who shall have the right to be present in each polling place at all times to observe all the work and the proceedings of his polling place, and the additional rights that are specially conferred upon him by this Act, but no other right; *Provided, further,* That no ballot shall be awarded to a party or candidate except by the unanimous vote of the poll board, including the observers provided in this section . . .'

"Such as the above section prevailed, as amended on July 6, 1932, each poll board consisted of two inspectors and two poll clerks appointed by the Supervisor of Elections on recommendation by the two principal political parties; any political party by petition, which had filed a general ticket including the Resident Commissioner to Washington, of at least ten per cent of the legally registered voters who voted at the last preceding election being entitled to appoint a representative to be known as an 'observer.' This section,

as the same prevailed in the 1932 election, contained a *proviso* which reads as follows·

" ' . . . If the two principal political parties should combine in any form, whether by fusing, by nominating the same candidate for Resident Commissioner to Washington, or by nominating the same candidates in a majority of the senatorial or representative districts of the island, the central directing organization of any organized political party or of any political party by petition having registered a general ticket with a Resident Commissioner to Washington, on petition of at least ten (10) per cent of the *legally* registered voters who voted at the last preceding election, may appoint a representative to be known as an inspector, and an assistant who shall act as secretary, to be appointed by the General Supervisor of Elections on recommendation of the political party by petition entitled to appoint them, and the inspector, as well as the secretary, shall have the same rights, privileges, obligations and prerogatives as the inspectors and secretaries of the principal parties . . .'

"Some of the legal provisions above transcribed are the same as those to which you called our attention in your letter of August 7 of the current year.

"The following is a condensed history of the political parties and their evolution during the last three preceding elections:

"Prior to the 1924 election the Partido Republicano Puertorriqueño was split into two sections: one of which retained the party organization and continued to be known as the Partido Republicano. This section entered into an agreement or alliance with the Partido Unión de Puerto Rico to register the same candidates in the election ticket for the next election. The other section held a separate convention and took the name of Partido Constitucional Histórico and formed a coalition with the Partido Socialista to register the same candidates. The allied parties, then appearing as the principal political parties, kept, however, their separate legal existence until the 1928 election by reason of their appearing in separate columns in the official election ticket, although both of them registering the same candidates for the offices the subject of the election (*Martínez* v. *Saldaña,* 38 P.R.R. 398). In this election there also went to the polls the Partido Socialista and the Partido Constitucional Histórico, appearing in separate columns but with the same candidates. The result of that election was that the Partido Unión de Puerto Rico received the largest number of votes and therefore con-

tinued to be the principal majority party. Next came the Partido Socialista which became the principal minority party. The third place was secured by the Partido Constitucional Histórico, the Partido Republicano coming in the fourth place.

"For the 1928 election the allied parties registered the same candidates in a single column under the name 'Alianza Puertorriqueña de los Partidos Unión de Puerto Rico y Republicano Puertorriqueño.' Likewise the coalition parties registered their candidates in a single column in the official general ticket under the name Partido Socialista Constitucional. As the result of that election the Alianza continued in possession of the status of principal majority party, but the allied parties became in contemplation of law a new party to be known as the Alianza Puertorriqueña (*Barceló* v. *Saldaña,* 42 P.R.R. 219). The Partido Socialista Constitucional kept its status of principal minority party. The merger of the two allied parties was due to the fact that by an Act approved May 7, 1927, sections 40 and 42 of the Election Act were amended in the sense of prohibiting, under the former, a person from being a candidate for the same office on two or more separate tickets, and of providing, under the latter, that such parties as at the previous election went to the polls as an alliance or coalition and registered separate tickets in which the same candidates either totally or in part appeared for the same offices, may file in the office of the Executive Secretary of Puerto Rico on petition of the central directive body of said alliance or coalition, a general name and an insigne for said alliance or coalition containing the insigne of each of the allied or coalition parties and underneath the same a single ticket shall be registered. It was provided that any alliance or coalition thus going to the polls should be considered as a single party with the same prerogatives, rights and duties as under the law pertained to the parties forming the same, it being considered as a principal or as an organized party according to the number of votes received at the election.

"Prior to the 1932 election the Alianza Puertorriqueña and the other political group which called itself Republicano Puro or Constitucional Histórico merged into a new political party under the name Unión Republicana. This new party acquired all the rights, prerogatives, etc., of the Alianza Puertorriqueña and became, therefore, the principal majority party. The Unión Republicana and the Partido Socialista formed a coalition for the 1932 election, registering the same candidates for the same offices, although in

separate columns. The Partido Liberal and the Partido Nacionalista went to the polls as parties by petition, without either of them, when registering, being represented in the election boards, because the former had failed to nominate a candidate for Resident Commissioner in the last preceding election (*Martínez* v. *Insular Board of Elections,* 43 P.R.R. 395), and the latter's candidate for Commissioner to Washington had failed to receive the number of votes required by law. Later on, however, owing to the fact that sections 1, 13 and 47 of the Election Act were amended by Act No. 3 of July 6, 1932, the above parties by petition were enabled to appoint observers in all election boards prior to the election day. As a result of that election the Partido Liberal Puertorriqueño became principal majority party; the Partido Unión Republicana became the principal minority party; and the Partido Socialista became an organized party. The Partido Nacionalista lost its status as a political party by petition. Then, by virtue of section 14, as amended and above transcribed, the Partido Socialista became a principal party also.

"Bearing in mind the law and the facts as above set forth, let us see whether in the opinion from this office of the 15th of last August the sections of our Election Law applicable to the point in controversy were rightly construed.

"It is stated in one of the paragraphs of the said opinion that at present and for the purpose of the law there is no coalition of parties, while in a subsequent paragraph it is stated that 'it is a fact that the two principal parties with representation in the Board formed a coalition in the manner prescribed in section 36 for the 1932 election, and it is also a fact that when section 14 was amended by Act No. 5 of April 2, 1934, account was taken of the result of that election for the purpose of classifying the principal political parties, and so long that, based on the result of that election, no change is made in their nature for the purpose of the composition of the Board, it is understood that the two principal political parties existing at the time of the 1932 election continue to form a coalition and likewise the party that became an organized party for that election continues so and has in the Insular Board of Elections the representation established in the *proviso* of section 36, viz., an observer entitled to voice and vote, and any tie vote shall be decided in the form and manner provided for in said section.'

"As may be seen, the two paragraphs are conflicting and can not be harmonized, because whereas by the former it was maintained that for the purpose of the law there is not at present any coalition

of parties, it is maintained by the latter that the two political parties which formed a coalition for the 1932 election continue as such coalition parties. In our judgment, the latter of the above two conclusions is the correct one, since according to the law, in order that the said two political parties could be considered as not forming a coalition, it is an indispensable requisite that their tickets should not include the same candidates at the time of registering the same.

''As we have stated before, the Partido Unión Republicana and the Partido Socialista joined their forces or formed a coalition for the 1932 election nominating the same candidates for all the offices, although appearing in separate columns on the general ticket. Such coalition, in my opinion, had legal existence as of September 10, 1932, when the said parties filed with the Executive Secretary their tickets with the same candidates for Resident Commissioner and for all the other offices in all the election districts in which the Island is divided, all of which in accordance with section 36 of the Election Act as amended by the Act of July 6, 1932. I am not aware whether a term was set to this coalition; but even though none might have been expressly set, yet, considering the special nature and the aims and purposes of political parties, the term of duration could not be other than four years (*Barceló* v. *Saldaña*), so that the said coalition is at present in all its force and shall be so until September 10, 1936 (the next general election year), on which date the said coalition shall be considered as terminated or continued, depending on whether said coalition parties shall register the same or separate candidates in their tickets for said election, or unless before said date and through an affirmative legal act on their part they show the non-existence of the coalition. Beside the foregoing and in accordance with the provisions of section 14 of the Election Act, the status, rights and prerogatives of political parties are determined by the number of votes received by their candidates in the preceding election, which shall be retained by them until they fail in a general election to receive the required number of votes. Likewise, it is provided by section 36 of the said Act that the rights of coalition parties shall be determined by the number of votes received by their candidates in the last preceding election. Lastly, section 42 of the same Act, as amended by Act No. 1 of May 7, 1927, confers on political parties, which at the preceding election went to the polls as allied or coalition parties and registered separate tickets with the same candidates for the same offices, a right which it does not confer on parties which took part in said election as separate

parties, viz., that of registering a general name for said alliance or coalition, etc. A reading of all the above sections clearly shows that the law itself still considers as coalition parties those which went to the polls at the 1932 election.

"It is also contended in the former opinion that the last two paragraphs of section 13, as amended by the Act of 1934, can only be applied prospectively, in other words, that 'if before the date of the 1936 election, that is, after September 10 at noon, there should arise the circumstances referred to in the paragraphs of section 13 already transcribed, it is from that time on that the representatives of the principal parties in the election boards shall be entitled to voice and vote in the form and manner established in the said paragraphs, that is, if the coalition is of two principal parties their representatives shall be entitled to one-half vote, and if the coalition is of three principal parties their representatives shall be entitled to one-third vote, in the deliberations of all election boards.'

"The first of the above two paragraphs provides that whenever two principal parties form a coalition for a general election and file in the office of the Executive Secretary two general tickets with the same candidates in thirty or more districts of the Island, then each member of the coalition parties shall be entitled to one-half vote in the decisions of the election boards; and the other paragraph provides that if the coalition was formed of the three principal parties, then each member of the coalition shall be entitled to one-third vote in the deliberations and decisions of the election boards. In the latter case, that is, where the three principal parties form a coalition, the observer of the first party by petition to be registered in the next and subsequent elections in accordance with the provisions of this Act shall have voice and vote in the decisions of the election boards.

"I do not think that there is strictly involved in this case the question as to the retroactivity of the Act but rather a state of facts existing at the time the above law, as amended, went into effect; in other words, whether on July 2, 1934, and at present a coalition of two principal parties did and does exist.

"The principal parties at present are the Liberal, the Unión Republicana and the Socialista. No organized parties exist any longer and I do not know which is the first party by petition having registered for the coming 1936 election.

"If the first paragraph above mentioned must be applied prospectively only, the result would be that the Partido Unión Republicana and the Partido Socialista, which at present form a coalition, would be entitled to one vote each in the deliberations and decisions of the election boards, as against one vote conferred on the Partido Liberal, that is to say, a ratio of two to one would exist, which would not be either fair or equitable and would be in violation of the principle of equality or equal representation which underlies election laws. On the other hand, if the construction given to the paragraphs in question should prevail, one of the principal parties would be at a disadvantage at the registration of voters soon to take place in respect to the other two principal parties, because the said two parties in all their acts, from the 1932 election up to the present, have shown and still show that they form a coalition for all legal purposes, especially for election purposes. As already stated, the Partido Liberal and the Partido Unión Republicana acquired the status of principal political parties as the result of the 1932 election, and in accordance with the law then in force their representation in the Insular Board of Elections and in the other election boards was equalized. For that reason, when section 14 was amended and the Partido Socialista was recognized as a principal party, section 13 was also amended by the insertion of the two paragraphs above referred to so as to preserve the equality of representation in the said boards of the opposing principal parties.

"We have to come to the above conclusion if we consider the mood and tense in which the verb (coligar) to form a coalition was used; if we consider the causes or reasons which led the Legislature to enact the said provisions and if we bear in mind the other sections 'in pari materia' of the Election Act as well as the facts and circumstances of the case.

"It is provided in the paragraphs upon which we are commenting that whenever two principal parties form a coalition (coaligaren) for a general election, filing in the office of the Executive Secretary general tickets with the same candidates in thirty or more election districts, each of the coalition parties shall be entitled to one-half vote in the deliberations and decisions of the election boards. The term 'coaligaren' is the future subjunctive of the (Spanish) verb 'coaligar.' According to the Spanish grammar the subjunctive mood expresses a desire or a fact depending from or subordinate to a fact indicated by either of the other moods, as for instance, 'I wish you would come,' 'I would read if you listen to

me,' 'if two principal parties form a coalition (se coaligaren), filing general tickets;' and the future subjunctive denotes an action as not terminated but always contingent with reference either to the present or to the future. The action being denoted as not terminated with reference either to the present or to the future, it is my opinion that if in July of 1934, when Act No. 5 of April 2 of the same year went into effect, there was a coalition of two parties, the provisions that each of the coalition parties was entitled to one-half vote in the deliberations and decisions of the election boards went into effect as from that date, especially as there is no word qualifying the term 'general election' which might refer either to a past or to a future election.

"Election statutes are liberally construed on the theory that they were enacted to prevent fraud and to secure to the citizen the integrity of the right to the ballot and to guarantee the freedom of choice.

" 'The purpose of elections is to obtain fair expression of the preferences of the qualified voters in accordance with the established law.' *Hall* v. *Barton,* 195 N. E. 753.

" 'In the absence of fraud, election statutes will be liberally construed to secure the elector opportunity to freely and fairly "cast his ballot and to uphold the will of the electorate and prevent disfranchisement." ' *Lumm* v. *Simpson,* 194 N. E. 341.

" 'Statutory provisions as to elections must be interpreted on theory that statutes were enacted to prevent fraud and mistakes and to secure freedom of choice, and are not to be so construed as to make right of voting and having votes counted with accuracy subject to technical obstructions not affecting merits of election.' *Clancy* v. *Wallace,* 193 N. E. 546.

"If we admitted that the parties referred to broke their connection or dissolved their coalition, they should be considered for all legal purposes as minority parties, and if this conclusion were reached it would have to be admitted that the Coalition only existed on election day for the purpose of defeating the parties which went to the ballots singly in the 1932 election. Such construction would not only be absurd but would also protect fraud in elections.

"If we shut our eyes to the real facts, it might be admitted that until the 10th of September arrives it could not be determined whether or not the two parties at present constituting a legislative majority form a coalition; but the facts being otherwise, that is,

that the said parties form at present a coalition, the fact that may be determined on the above mentioned date is whether or not their coalition shall be continued.

"It must not be forgotten that in the 1932 election the Partido Socialista lost its status of principal party and when the said status was bestowed on it by the Act of 1934 it was not the intention of the Legislature to give to the Coalición an advantage over the other principal party. Therefore, if the Act must be retroactively construed in so far as the provisions in regard to the status of the Partido Socialista are concerned, the same should apply to the provisions relating to the vote of the representatives of the principal parties in the election boards.

"Another erroneous conclusion reached in the opinion referred to is that where it is stated that the party which was organized for the 1932 election continues to be an organized party and that the same is entitled to representation in the Insular Board of Election established by the provisions of section 36, viz., an observer, having voice and vote. We have already maintained that as a result of the 1932 election the Partido Liberal became the principal majority party, the Partido Unión Republicana became the principal minority party and the Partido Socialista acquired the status of an organized party because it has received only 10% of the total vote cast for Resident Commissioner in the said election. In other words, the Partido Socialista which was a principal minority party became an organized party, its place being taken by the Partido Unión Republicana which went to the polls in that election as the principal majority party. This status was wrested from it at the polls by the newly created Partido Liberal. The Partido Nacionalista lost its status of organized party as it failed to receive 10% of the total vote cast for all the candidates for the office of Commissioner to Washington.

"When the status of the parties was changed their representation in the Insular Board of Elections was also changed, so that the observer of the Partido Liberal became a member of the Board as the representative of the principal majority party; the representative in the Board of the Partido Socialista became an observer, and the observer of the Partido Nacionalista ceased as such. This situation continued until June 2, 1934, when Act No. 5, which amended section 14 and gave to the Partido Socialista the status of principal party, went into effect. By virtue of the above section the organized parties were eliminated and the parties by petition

were given an observer upon registration, so that at present there are no observers of parties by petition in the Insular Board of Elections.

"By reason of the foregoing I hold the opinion that the members of the Insular Board of Elections and of other election boards who represent the principal parties at present forming a coalition (Partido Unión Republicana and Partido Socialista) are entitled only to one-half vote in the decisions of the said boards.

"This opinion revokes the former opinion from this office of August 22, 1935."

Plaintiffs in a complaint filed in the district court October 7 alleged: that the Republican Union Party and the Socialist Party of Puerto Rico are two principal political parties in the Island of Puerto Rico defined and recognized by law; that Leopoldo Figueroa and Bolívar Pagán are members of the Insular Board of Elections as the representatives of these two political parties; that Charles H. Terry is a member and chairman of the Insular Board of Elections; that the Puerto Rican Liberal Party is a principal political party in the Island of Puerto Rico, defined and recognized by law; and that Frank A. Martínez is a member of the said board as a representative of the Puerto Rican Liberal Party. The rest of the complaint reads as follows:

"3.—That the Insular Board of Elections is an official board of the Insular Government of Puerto Rico, created by law and consisting at present of four members, viz., the said president who is the executive officer and the other three members above mentioned representing the three principal political parties of the Island of Puerto Rico; and that each of these three principal political parties is also entitled by law to equal representation and voice and vote in all election boards and bodies created by the Election Law now in force.

"4.—That for the purpose of the preliminary work for the next general election to be held in Puerto Rico in the month of November 1936, pursuant to the provisions of the Organic Act and of the Election Law, the members of the said Insular Board of Elections were urgently called to meet on October 2, 1935, to consider important matters, to deliberate thereon and to decide them by resolution adopted by ballots cast by the members of the Board.

"5.—That the said meeting of the Insular Board of Elections was suspended for a few days, while it is indispensable and urgent to hold the meeting in order to take the resolutions by ballot to which reference is made in the foregoing paragraph; and that the said suspension was due to the uncertainty created in the minds of the members of the Insular Board of Elections by reason of the facts hereinafter stated.

"6.—That, owing to the interpretation given to the said Election Law (Act No. 79, approved July 23, 1919), as amended by Act No. 5, approved April 2, 1934, there were issued from the office of the Attorney General of Puerto Rico two conflicting opinions dated August 22 and September 30, 1935, which affect the vote of the members which represent in the said Board the principal political parties Unión Republicana and Socialista, and which affect also the rights of equal and fair representation conferred by said Act No. 5 of 1934 on all principal political parties of the Island of Puerto Rico.

"7.—That the plaintiffs transcribe in this complaint said conflicting opinions from the office of the Attorney General and make them part thereof.

"8.—That for election purposes, to which reference is made in said Act No. 5 of April 2, 1934, the Partido Unión Republicana and the Partido Socialista do not form at present a coalition, nor were the above two parties forming a coalition either at the time of the approval of Act No. 5 of 1934 or when the same went into effect.

"9.—That the Partido Unión Republicana and the Partido Socialista are two separate principal parties, and that each of them is a live and active party, in a separate and independent manner, with its respective organization, central and local committees, and, even more, each of the above two parties maintains separately and publicly distinct rules and regulations, separate direction, a separate program, and separate symbols and banners; and these two parties Unión Republicana and Socialista, have not yet agreed upon, proposed, discussed, or considered in any way any combination or coalition with the same candidates in any district of the Island of Puerto Rico for the general election of 1936.

"10.—That the plaintiffs allege that the said Election Law (Act No. 79, approved on July 23, 1919, as amended by Act No. 5, now in force, approved on April 2, 1934) must be construed by applying its provisions prospectively, according to the general principles of law and in accordance with the universal principles of legal hermeneutics which govern the construction of substantive statutes,

and especially in accordance with the letter and spirit of the aforesaid Act No. 5, approved on April 2, 1934, which establishes 'permanent, equal, and fair electoral representation' for all principal political parties in the Island of Puerto Rico; and the plaintiffs maintain that the representatives of the principal political parties, Partido Unión Republicana and Partido Socialista, as well as the representative of the Partido Liberal, are each of them entitled to voice and a whole vote in the deliberations and decisions of the Insular Board of Elections, and they shall continue to enjoy such right until there takes place at a future time what the Election Law itself indicates, that is, the registration in the office of the Executive Secretary of Puerto Rico in the manner established by the law of the same candidates for, or a coalition is formed by, the Partido Unión Republicana and the Partido Socialista, or the Partido Unión Republicana and the Partido Liberal Puertorriqueño, or the Partido Socialista and the Partido Liberal Puertorriqueño, or the Partido Unión Republicana, the Partido Socialista and the Partido Liberal Puertorriqueño, according to the future circumstances, and then the representatives of the aforesaid three principal political parties shall be entitled each in the Insular Board of Elections to one-third vote, one-half vote or a whole vote, according to the future contingency.

''11.—That in the said opinion issued by the Attorney General on September 30, 1935, it is held that the aforesaid Act No. 5 of 1934 must be applied retroactively as regards the vote of the representatives of the Partido Unión Republicana and the Partido Socialista prior to the date stated in the Election Law itself for the registration of coalition tickets, that is, by applying to facts that occurred in September 1932 (for the general election of 1932) a law approved on April 2, 1934, which, in so far as the same refers to the limitation of the vote of the members of the said Board, was enacted to be applied to other subsequent facts which have not yet occurred.

''The interpretation applied by the Attorney General in his said opinion of September 30, 1934, rests on mere conjectures in regard to events which have not occurred and which are uncertain and aleatory.

''The representative of the Partido Liberal in the Insular Board of Elections holds the same theory set forth by the Attorney General in his opinion dated September 30, 1935, and the president, who is the executive officer of the Insular Board of Elections, is

ready to enforce said Act No. 5 of 1934 in accordance with the theory in the opinion dated September 30, 1935, that is, depriving of one-half vote each of the representatives of the said Partido Unión Republicana and Partido Socialista in the said Board.

''That the attitude of the president of the Insular Board of Elections and the Liberal member of the said Board, as has been stated, places in imminent danger the right of the Partido Unión Republicana and Partido Socialista and their respective representatives in the said Board, because as each of the representatives of the above two parties is entitled to one-half vote in the Insular Board of Elections prior to the registration of tickets for the general election in 1936 on the date stated in the Election Law, both the Partido Unión Republicana and the Partido Socialista would be prejudiced, and such voting by the representatives of the Partido Unión Republicana and the Partido Socialista casting one-half vote each would be a violation of the purpose of the Legislature of Puerto Rico when enacting Act No. 5 of 1934, both in its letter and spirit, which insures permanently equal and fair representation to the three principal political parties in the Island of Puerto Rico.

''12.—That the prejudice and imminent danger referred to in the foregoing paragraph may be caused against either the Partido Unión Republicana or the Partido Socialista when voting on the inclusion or exclusion from the list of voters of such parties, in accordance with the procedure prescribed for that purpose by the Election Law, which is one of the important questions to be considered and decided soon by ballot by the Insular Board of Elections.

''13.—That in order to clear up the situation brought about by the aforesaid conflicting opinions issued by the office of the Attorney General and to prevent the inequity and imminent injustice as above stated, and as a remedy against the uncertainty and insecurity created by the said conflicting opinions among the members of the Insular Board of Elections, and in order to avoid a multiplicity of dilatory suits that might hamper the smooth working of such an important body as the Insular Board of Elections, the plaintiffs apply to this Hon. Court relying on the provisions of the 'Uniform Declaratory Judgment Law' in force now and approved on April 25, 1931.

''By virtue of all of which, the said plaintiffs pray this Hon. Court to render, in due course of law, the proper declaratory judgment or decree in the sense that the Election Law, as amended by Act No. 5 of April 2, 1934, must be interpreted in accordance with

the theory of the plaintiffs as set forth in the tenth paragraph of this complaint, that is, until there are registered at a future time in the office of the Executive Secretary of Puerto Rico the same or coalition candidates of the aforesaid principal parties, the Partido Unión Republicana and the Partido Socialista, or of the Partido Unión Republicana and the Partido Liberal Puertorriqueño, or of the Partido Liberal Puertorriqueño and the Partido Socialista, or of the three principal parties, the two parties, the Partido Unión Republicana and the Partido Socialista, are entitled to a whole vote in the deliberations and decisions of the Insular Board of Elections; and we further pray this Hon. Court to make an order enjoining the president of the Insular Board of Elections from doing anything in restraint of the exercise and weight of a whole vote by each of the representatives of the Partido Unión Republicana and the Partido Socialista in the Insular Board of Elections, until a future date, with the other legal pronouncements as required by law and justice.''

The district court overruled a demurrer for defect of parties defendant and sustained a demurrer for want of facts sufficient to constitute a cause of action. Plaintiffs declined to amend and appeal from a judgment of dismissal. From the order sustaining the demurrer for want of facts sufficient to constitute a cause of action we take the following extract:

''As to the second question, that is, the demurrer for want of facts sufficient to constitute a cause of action, it does not appear from a careful reading of the complaint that there is any controversy or difference for settlement among the members of the Insular Board of Elections in regard to the construction of the Election Law requiring any action on the part of this court. Section 13 of the Election Law, as amended by Act No. 5 of 1934 (Session Laws of that year, p. 188) says, in regard to principal parties forming a coalition for a general election, that each of the coalition parties shall be entitled to one-half vote, if they are two, in the deliberations of the election boards. Section 14 defines the term 'principal parties' as being the three political parties whose candidates for Resident Commissioner of Puerto Rico to the United States received the largest number of votes cast in the last preceding election, in the column of general candidates. It is alleged in the petition or complaint in the

present case that the member or representative of the Partido Liberal and the president of the Insular Board of Elections are about to enforce the above provision in conformity with the opinion of the Attorney General dated September 30, 1935, that is, depriving of one-half vote each of the representatives of the parties, the plaintiffs herein, in the said Board.

"The 'Uniform Declaratory Judgment Law' can not be the means for a court to deliver simply an opinion that may or may not be complied with by the interest parties, rather it expressly provides that the judgment or decree to be rendered by the court in the premises shall put an end to the controversy or clear any uncertainty (section 5 of the Act). It does not appear from the complaint that there is any controversy between the parties but a mere difference of opinion, and as there is no controversy there can not be either any uncertainty as to the form and manner to be followed by the defendant members of the Insular Board of Elections in casting their ballots. The whole question raised in the petition or complaint is whether or not there is a coalition of the Partido Unión Republicana and the Partido Socialista, and this is purely and simply a question of fact. A declaratory judgment proceeding may be established whenever there is any difference in regard to the construction or validity of any statute, ordinance, contract, or franchise (section 2 of the Act), and if in order to consider and decide the same there is involved the determination of a fact, then may such fact be considered and determined in the same way as in any other civil proceeding. But if the statute, the ordinance, the contract, or the franchise does not raise any divergency or discrepancy in its construction, because the letter is entirely free from ambiguity, then the Uniform Declaratory Judgment Law is not applicable."

If the district court, in the last sentence of the preceding paragraph, meant that the language of the penultimate paragraph in section 13 of the Election and Registration of Law of 1919, as amended in 1934 (Session Laws, pp. 188, 194), is so free from all ambiguity as to leave no room for doubt or construction, we cannot concur in that view. The paragraph in question reads as follows:

"Whenever two principal parties form a coalition for a general election and file in the office of the Executive Secretary both general tickets with common candidates in thirty or more precincts of the

Island, then each member of the coalition parties shall have one-half of a vote in the decisions of the election boards.''

Whether this language means what it was construed to mean by the first of the two opinions furnished the chairman of the Board of Elections by the Department of Justice or whether it should be construed as it was construed by that department in the second of those two opinions is a debatable question. It is a question which was not decided by the district court. On the contrary, the district court assumed without deciding that the two parties which had formed a coalition for the purposes of the 1932 election were entitled only to one-half vote each as members of the Insular Board of Elections during the registration period of 1936, notwithstanding the averment that for the purposes of that election year no such coalition exists. In so doing, the court, of course, begged the question squarely raised by the complaint.

Neither the question as to how the statute should be construed, nor the question as to whether the statute was open to construction, was properly before the district court. Those questions go to the merits of the alleged controversy, not to the sufficiency of the complaint. The only question raised by the demurrer for want of facts sufficient to constitute a cause of action was the question as to whether the facts stated in the complaint entitled plaintiffs to a judicial determination of the legislative intention. Plaintiffs had not been heard on the question last mentioned and should have an opportunity to be heard on that question before a determination thereof either by the district court or by this court.

What the district court definitely decided was that the complaint did not state facts sufficient to constitute a cause of action because it did not disclose the existence of a justiciable controversy. Conceding, as we do, that there must be such a controversy (Borchard On Declaratory Judgments, p. 26; 87 A. L. R. 1213; 68 A. L. R. 117; 50 A. L. R. 45),

the only question before us is whether or not the district court erred in deciding that there was none.

Not only did plaintiffs have a tangible interest in obtaining a judgment but there was an opposing claim and the action was adversary in character. Borchard, pp. 26, 27. Here we have not only the ripening seeds of an actual controversy but a full-blown battle. Borchard 41. The dispute has all the earmarks of an actual, genuine, live controversy. The question is not moot. Plaintiffs are asserting a claim of right against defendants who have an interest in contesting it. The interest of plaintiffs is present, not contingent. The action is not a fictitious or collusive suit where only an opinion is sought. We have no doubt that a final judgment in the instant case will settle the controversy. The controversy is not only genuine but ripe for decision with plaintiffs and defendants having both potentially and actually opposed interests. The alleged rights of plaintiffs appeared to be in direct issue and in jeopardy. The facts are sufficiently complete, proximate, and ripe to place plaintiffs in gear with their adversaries and we think, that the danger is not too remote. Borchard, 38; The complaint might have been more specific as to tangible acts or threats calculated to arouse justifiable apprehension, fear, and danger of legal injury; but the facts stated show, we think, that the danger is not too remote. Borchard 38; *State* v. *Dammann,* 254 N. W. 759, 761; *Wingate* v. *Flynn,* 139 N. Y. Misc. Rep. 779, affirmed in 256 N. Y. 690; *Bareham* v. *City of Rochester,* 246 N. Y. 140, 158 N. E. 51; *In re Freeholders* v. *Hudson County,* 143 Atl. 536, 537; *Miller* v. *Miller,* 149 Tenn. 463; *Washington-Detroit Theatre Co.* v. *Moore,* 249 Mich. 673; *Sullivan & Sons Mfg. Co.* v. *Ideal Building & Loan Assoc.,* 313 Pa. 407, 98 A. L. R. 1; *Moore* v. *Moore,* 147 Va. 460, 137 S. E. 488; and see also 87 A. L. R. 1236; 68 A. L. R. 126 and 50 A. L. R. 51.

A demurrer admits all facts well pleaded. It is not pretended that the facts set forth in the complaint are not well

pleaded. The facts before the district court are uncontroverted. Even if issue had been joined by the filing of an answer there would have been no complicated issues of fact. There are no jury trials in civil cases in the insular courts. The taking of testimony, if it should become necessary, could not cause great inconvenience. Borchard 114–117. In any event, we cannot agree with the district court that the question presented by the complaint is purely a question of fact. Aside from any question of mixed law and fact, any question of fact in the instant case will be incidental and subordinate to the legal conclusions which may be reached. The paramount question is a question of statutory construction.

The judgment appealed from must be reversed. The demurrer for want of facts sufficient to constitute a cause of action will be overruled and the case remanded for further proceedings not inconsistent herewith.